Michelle E. Hill, Esq. (CSB# 183126)
HillLawFirm@charter.net
THE HILL LAW FIRM
3200 E. Guasti Road, Suite 100
Ontario, California 91761
Telephone:  (909) 295-2497

Attorneys for Plaintiff
NEIL MCGOWAN

# UNITED STATES DISTRICT COURT OF CALIFORNIA

## FOR THE NORTHERN DISTRICT - SAN JOSE DIVISION

| | |
|---|---|
| NEIL MCGOWAN, an individual, | Case No.: |
| Plaintiff, | Assigned for all purposes to Department |
| v. | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR** |
| NETAPP, INC., a Delaware corporation. HENRI RICHARD, ELIZABETH O'CALLAHAN. DEBRA MCCOWAN, CÉSAR CERNUDA, RICHARD SCURFIELD, MAXWELL LONG, ROSALIND HILL, and Does 1 through 50, | **(1) VIOLATION OF RICO 18 U.S.C. § 1962(a);** |
| | **(2) VIOLATION OF RICO 18 U.S.C. § 1962(c);** |
| | **(3) VIOLATION OF RICO 18 U.S.C. § 1962(d);** |
| Defendants. | **(4) BREACH OF CONTRACT;** |
| | **(5) BREACH OF IMPLIED COVENANT OF GOOD FAITH;** |
| | **(6)  FRAUD;** |
| | **(7) RETALIATION IN VIOLATION OF LABOR CODE § 1102.5(b);** |
| | **(8) RACE/NATIONAL ORIGIN DISCRIMINATION;** |
| | **(9) WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY;** |
| | **(10) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;** |

1

|   |   |
|---|---|
| 1 | ) **(11) FAILURE TO PAY ALL WAGES IN VIOLATION OF <u>LABOR CODE</u> §** |
| 2 | ) **204 AND 204.1;** |
| 3 | ) |
| 4 | ) **(12) STATUTORY PENALTIES PURRSUANT TO <u>LABOR CODE</u> § 210;** |
| 5 | ) **(13) WAITING TIME PENALTIES IN** |
| 6 | ) **VIOLATION OF <u>LABOR CODE</u> § 203; AND** |
| 7 | ) **(14) UNFAIR BUSINESS PRACTICES** |
| 8 | ) **IN VIOLATION OF <u>BUSINESS & PROFESSIONS CODE</u> § 17200.** |
| 9 | ) **DEMAND FOR JURY TRIAL** |
| 10 | ) **[ND CA Rule 3-6(a)** |

COMES NOW Plaintiff NEIL MCGOWAN ("Plaintiff" or "MCGOWAN") alleges, by and through his attorney, THE HILL LAW FIRM, by Attorney Michelle E. Hill, as and for claims against the Defendants NETAPP, INC. ("NETAPP"), HENRI RICHARD, (RICHARD) ELIZABETH O'CALLAHAN (O'CALLAHAN), DEBRA MCCOWAN (MCCOWAN), CÉSAR CERNUDA (CERNUDA), RICHARD SCURFIELD (SCURFIELD), MAXWELL LONG ("LONG"), and ROSALIND HILL ("HILL"), and shows to the Court as follows:

**<u>JURISDICTION</u>**

1.      This action arises under federal law and the laws of California.  Plaintiffs seek to recover compensatory damages sustained, resulting from Defendants' alleged fraudulent conduct, along with the costs of this suit, interest and reasonable attorney's fees.  This Court has original jurisdiction pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 <u>U.S.C.</u> § 1965  (specifically 18 <u>U.S.C.</u> § 1964(a), (c) and (d)), and 28 <u>U.S.C.</u> § 1331.

2.      This Court has supplemental jurisdiction pursuant to 28 <u>U.S.C.</u> § 1367 over Plaintiff's California law claims for national origin discrimination in violation of California <u>Fair Employment and Housing Act</u>, codified in <u>Government Code</u> §12900, *et*

*seq*. ("FEHA"), retaliation in violation of Government Code §12940(h) and Labor Code § 1102.5(b), wrongful termination in violation of public policy, intentional infliction of emotional distress, and unfair business practices in violation of Business and Professions Code § 17200 *et seq*.

## DIVISIONAL ASSIGNMENT

3.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2), (c)(2), and (d) because Defendant NETAPP's corporate headquarters are located within this Northern judicial district employing Plaintiff as well as numerous other California employees and it engages in business throughout California and the district creating sufficient contacts to subject NETAPP to personal jurisdiction  and which it has the most significant contacts. Additionally, a substantial part, if not all, events giving rise to Plaintiff's claim occurred within this judicial district.

## NATURE OF THE ACTION

4.     Plaintiff MCGOWAN has been victimized by a pattern of racketeering activity perpetrated against him and other commission earning employees in a manner forbidden by Section 1962.  After the 2018 companywide reorganization, Defendant NETAPP openly expressed its intent to reduce operating expenses.  As it is well-established that employee salaries are a company's highest operating expense, Defendants HENRI RICHARD ("RICHARD"), ELIZABETH O'CALLAHAN ("O'CALLAHAN"), DEBRA MCCOWAN ("MCCOWAN"), and RICHARD SCURFIELD ("SCURFIELD") with the assistance of the finance, human resources and accounting departments mastermind various schemes and tactics that allowed them to untimely pay and/or outright deny the sales team earned commissions.

5.     These conspiring executives, directors, officers and managing agents created incentive commission plans under the false pretense that Plaintiff MCGOWAN and other commission earning employees, including other VP/GMs, had the opportunity to maximize their respective commission earnings based upon meeting specified sales goals.  Having implemented a masked commission depressor, RICO Defendants

knowingly induced Plaintiff and others to meet and surpass the specified sales goals but RICO Defendants had no intention of paying the promised commissions at the time they were earned, and on at least two separate occasions, did not pay the commissions earned.

6. Commencing in May 2018 and continuing to the present, Defendants utilized the company's Annual Fiscal Year (FY) Incentive Compensation Plan ("Incentive Plan") as a vehicle to implement their scheme and could not have done so without the complicity and assistance of each of the other named Defendants, including Defendant NETAPP, INC. ("NETAPP").

7. Defendant NETAPP agreed to compensate Plaintiff and other salespersons with a base salary plus commissions earned through a commission plan incentive. Under the false pretense and intentional misrepresentation that Plaintiff and other sales employees would earn commissions equivalent to 100% of their respective salary for selling product at agreed upon goals, Plaintiff and the sales team worked diligently to exceed said agreed upon goals. Yet, Defendants had no intention of fully compensating them.

8. Defendant NETAPP allowed individual Defendants RICHARD, O'CALLAHAN, MCCOWAN and SCURFIELD to draft, issue and implement Incentive Plans and Goal Sheets knowing that they had no intention of fully honoring the commissions earned. Consistent with said intent, Defendant NETAPP allowed Defendants to deny Plaintiff his earned commissions on at least two occasions despite Plaintiff surpassing his stated and agreed upon goals. Defendant NETAPP was instrumental in falsely classifying Plaintiff and other sales employees' previously earned wages as retention bonuses for less than the amount owed and paid only if Plaintiff remained employed. Said retention bonus constituted and continues to constitute secret deductions in violation of California's established public policy against any deductions, setoffs, or recoupments by an employer from employee wages or earnings, except those deductions specifically authorized by statute.

9.      Finally, by denying Plaintiff and other sales employees their respective fully earned commissions, Defendant NETAPP misrepresented the profitability of the company to not only the shareholders, but also, submitted misleading reports to the Security Exchange Committee ("SEC) that, based upon information and belief, further evidence that Defendants secretly pays a lower wage while purporting to pay the wage designated by the parties' contract."

10.      As a result of the commissions scheme as described more fully below, NETAPP and the individual  Defendants have received income derived, directly or indirectly, from Defendants' pattern of racketeering activity, and has used or invested, directly or indirectly, said income, or the proceeds of such income, in acquisition of interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

11.      Plaintiff MCGOWAN repeatedly disclosed to RICO Defendants as well as executive level managing agents and officers the illegality of Defendants' failure timely and fully pay all commissions earned.  In retaliation for his advocacy, RICO Defendant subjected Plaintiff to differential treatment because of his race/national origin by not only denying his earned commissions, but also, subsequently terminated his employment. Defendants violated SOX, FEHA, California Labor Laws, and other Unfair Competition Laws.

## PARTIES

12.      Plaintiff MCGOWAN is an adult African American male, Guyana national origin, and a resident of Alameda County, State of California.  At all times relevant to this action until his termination on August 23, 2022, Plaintiff was employed with Defendant NETAPP.  At all times alleged herein, Plaintiff MCGOWAN was a commission earning employee whose home base office was Defendant NETAPP's Santa Clara County office, located at 3060 Olsen Drive, San Jose, California 95128.

13.      Defendant NETAPP, a cloud-led, data-centric software business, is a publicly traded Delaware Corporation, organized and doing business throughout California

(Corporate No. 2370651), including at its corporate headquarters located at 3060 Olsen Drive, San Jose, California 95128, Santa Clara County.  Defendant NETAPP's executive and decision-making team consists of the chief executive officer (CEO), president, executive vice president and chief procurement officer (EVP & CPO), executive vice president and chief financial officer (EVP & CFO), and executive vice president and chief human resources officer (EVP & CHRO).  This executive management team oversees not only company operations, but also finance, payroll, and human resources, and therefore from the corporate offices.

14.     In addition to California, NETAPP also conducts its business throughout the United States and globally via its sales team workforce who provides systems, software and cloud services to companies across state lines as well as those in other countries that enable them to run their applications optimally from data center to cloud.  As such, NETAPP engages in interstate and foreign commerce.

15.     For the purposes of Plaintiff MCGOWAN's claims under 18 U.S.C. § 1964(c), Defendant NETAPP is the enterprise, within the meaning of 18 U.S.C. §§ 1961(4) through which the RICO Defendants conducted their racketeering activity.  For purposes of Counts Two and Three for violations of RICO, 18 U.S.C. §§ 1962(c) and (d), respectively, Defendant NETAPP is not a defendant.

16.     Defendant NETAPP is liable under 18 U.S.C. § 1962(a) because it received the proceeds from the alleged racketeering activity and is liable as a principal for those acts.

17.     Regarding the state claims, Defendant NETAPP, a California based company employing individuals throughout the state is an entity subject to suit under the California Fair Employment and Housing Act, codified in Government Code §12900, *et seq*.  ("FEHA") in that, at all times alleged herein, it employed and regularly employs five or more persons.

18.     As Plaintiff's former employer, Defendant NETAPP is vicariously liable for each of the state counts because all unlawful, discriminatory, and retaliatory conduct

and decisions alleged herein was performed by an officer, director, managing agent and/ or employee while acting in the course and scope of said relationship with Defendant NETAPP. At all times herein, Defendant NETAPP failed to fully and timely pay Plaintiff and other employees al wages earned. Defendants' unlawful employment practices consisting of violations of the California Government, Labor, and Business and Professions Codes all occurred in the County of Santa Clara.

19. Defendant RICHARD is an individual and an adult, and was previously based out of Defendant NETAPP's San Jose, California office, located at 3060 Olsen Drive, San Jose, California 95128, Santa Clara County. Defendant NETAPP employed Defendant RICHARD from May 2016 (Fiscal Year (FY) 2017) through the end of FY20. As executive vice president of Worldwide Field and Customer Operations, Defendant RICHARD was responsible for expanding relationships with Defendant NETAPP's strategic technology partners, resellers, and customers across the globe. He led the company's global customer success operations and field operations, which focused on customer-facing functions, and supported NETAPP's ecosystem of channel, alliance, and service partners. At all times during his employment, he managed all offices and the company's operations throughout the United States and globally. Defendant RICHARD was the direct supervisor of Richard Scurfield and other senior vice presidents in global sales. Defendant RICHARD had discretion to decide on employee discipline as well as modify company payment structures. At all times herein, RICHARD was a managing agent with apparent authority over Plaintiff MCGOWAN and was responsible for business operations and during the course and scope of his employment, managed the operations of Defendant NETAPP's national and international sales department.

20. Defendant RICHARD is a person within the meaning of 18 U.S.C. §1961(3), and as a person associated with said enterprise which violated 18 U.S.C. §§ 1962(c) and (d). Plaintiff MCGOWAN alleges that Defendant RICHARD conspired with co-Defendants and other directors, officers and managing agents to concoct the fraudulent commissions scheme to reduce operating expenses. Defendant RICHARD

created, concocted and/or actively participated in said ongoing scheme which commenced in 2018 and continues to the present wherein Defendants misrepresented to Plaintiff and at least eighty-nine (89) sales team their commissions earned and intentionally failed to pay all commissions owed. Defendant RICHARD benefited from said fraud and misrepresentation as he received substantial cash bonuses and restricted stock units (RSUs) awards for the fraudulently increased financial results.

21.     Defendant O'CALLAHAN is an individual and an adult, and based upon information and belief, a California resident based out of the company's San Jose, California office, Santa Clara County. Defendant O'CALLAHAN has been employed with Defendant NETAPP's legal team since 2013. Employed at the executive level, Defendant O'CALLAHAN is the company's chief legal officer, appointed in October 2018, responsible for overseeing all legal matters at the company and managing the worldwide legal team. She is also the corporate secretary and chief compliance officer responsible for ensuring that all regulatory filings with the Securities Exchange Commission ("SEC") are complete, accurate, and truthful.

22.     Defendant O'CALLAHAN is a person within the meaning of 18 U.S.C. §1961(3), and as a person associated with said enterprise which violated 18 U.S.C. §§ 1962(c) and (d). Plaintiff alleges that Defendant O'CALLAHAN conspired with co-Defendants and other directors, officers and managing agents to concoct the fraudulent commissions scheme to reduce operating expenses.  Defendant O'CALLAHAN conducts and/or actively participates in said ongoing scheme which misrepresented to Plaintiff and the sales team their commissions earned.  Defendant O'CALLAHAN benefited from the misrepresented earned and unpaid commissions as she received substantial cash bonuses and RSU awards for the fraudulently increased financial results.

23.     Defendant MCCOWAN is an individual and an adult, and based upon information and belief, a resident of California, and is based out of the company's San Jose, California office. Defendant MCCOWAN has been employed with Defendant NETAPP since October 15, 2018. She is the company's executive vice president and

chief human resources officer ("CHRO"), responsible for developing the global HR strategy and leading the entire organization, including talent acquisition, talent development and learning, business partnerships, organizational development and effectiveness, compensation and benefits, diversity, inclusion and belonging, operations, and systems.

24.     Defendant MCCOWAN is a person within the meaning of 18 U.S.C. §1961(3), and as a person associated with said enterprise which violated 18 U.S.C. §§ 1962(c) and (d).   Defendant MCCOWAN conducts and/or actively participates in the named RICO Defendants' fraudulent commission scheme created to "streamline its core business and reduce operating expenses without losing its competitive edge.  Defendant MCCOWAN benefited from the misrepresented earned and unpaid commissions, based upon information and belief, by concealing said true facts concerning NETAPP's expense and obligation payments regarding commissions.  She received substantial cash bonuses and RSU awards for the fraudulently increased financial results.

25.     Defendant SCURFIELD is an individual and an adult, and based upon information and belief, a resident of Santa Clara County, California.  Defendant SCURFIELD had been employed with Defendant NETAPP for almost twenty (20) years when he appointed to the position as senior vice president of Globals (SVPG).  Defendant SCURFIELD was responsible for growing and leading sales teams supporting Defendant NETAPP's largest global accounts, vertical segments, global pathways, and the U.S. public sector.  He managed all offices and the company's operations throughout the United States and globally and has discretion to decide on employee discipline as well as modify company payment structures.  Defendant SCURFIELD is based out of the company's San Jose, California office, located at 3060 Olsen Drive, San Jose, California 95128, Santa Clara County.

26.     Defendant SCURFIELD is a person within the meaning of  18 U.S.C. §1961(3), and as a person associated with said enterprise which violated 18 U.S.C. §§ 1962(c) and (d).   Defendant SCURFIELD conducts and/or actively participates in the

named RICO Defendants ongoing scheme to fraudulently misrepresent the commissions earned and paid to the sales team and to misclassify said earned wages as retention bonuses in subsequent quarters.  Defendant SCURFIELD benefited from the misrepresented earned and unpaid commissions.  In May 2021, he was promoted to chief commercial officer and received substantial cash bonuses and RSU awards for the fraudulently increased financial results.

27.    Defendant CÉSAR CERNUDA ("CERNUDA") is an individual and an adult, and based upon information and belief, a resident of Madrid Spain.  On or about May 2020, Defendant NETAPP employed Defendant CERNUDA as President of Worldwide Sales North (PWWS) to ramp up the company's efforts to drive consistency and simplicity across its global sales organization and more aggressively address key markets and segments while reaching new customers and partners.  Defendant CERNUDA managed and continues to manage offices and the company's operations in multiple states and countries and has discretion to decide on employee discipline as well as modify company payment structures.  Defendant CERNUDA is based out of the company's San Jose, California office, located at 3060 Olsen Drive, San Jose, California 95128, Santa Clara County.

28.    Defendant CERNUDA is a person within the meaning of  18 U.S.C. §1961(3), and as a person associated with said enterprise which violated 18 U.S.C. §§ 1962(c) and (d).  Upon his appointment, Defendant CERNUDA learned of said ongoing scheme and then actively participated in the scheme to fraudulently misrepresent the commissions earned and paid to the sales team.  Defendant CERNUDA benefited from the misrepresented earned and unpaid commissions as he received substantial cash bonuses and RSU awards for the fraudulently increased financial results.

29.    Defendant MAXWELL LONG ("LONG") is an individual and an adult, and based upon information and belief, a resident of Santa Clara County, California.  On or about May 1, 2021, Defendant NETAPP employed Defendant LONG as senior vice president of North America sales (SVPNA) to continue the company's focus on aligning

NETAPP's business objectives in the United States and Canada as driven by NETAPP's customers' business requirements.  The executive level appointed Defendant LONG to lead direct sales, channel sales, and demand generation teams.  He manages offices and the company's operations in multiple states and Canada and has discretion to decide on employee discipline as well as modify company payment structures.  Defendant LONG is based out of the company's San Jose, California office, located at 3060 Olsen Drive, San Jose, California 95128, Santa Clara County.

30.     Defendant LONG is a person within the meaning of  18 U.S.C. §1961(3), and as a person associated with said enterprise which violated 18 U.S.C. §§ 1962(c) and (d).  Upon becoming Plaintiff MCGOWAN's direct supervisor, Defendant LONG began and continued to actively participate in the ongoing scheme to fraudulently misrepresent the commissions earned and paid to the sales team and to misclassify said earned wages as retention bonuses. At all times herein, Defendant LONG was a managing agent with apparent authority over Plaintiff MCGOWAN, and was responsible for business operations, and did, and continues to manage the operations of Defendant NETAPP's national and international sales department.  He benefited from said fraud and misrepresentation as he received substantial cash bonuses and RSU awards for the fraudulently increased financial results.

31.     Defendant ROSALIND HILL ("HILL") is an individual and an adult, and based upon information and belief, a resident of Santa Clara County, California. Defendant HILL is employed with Defendant NETAPP as director, human resources, directly handling issues for Defendant LONG's direct reports, including Plaintiff. Defendant HILL has the discretion to decide on employee discipline as well as modify company payment structures.  Defendant HILL is based out of the company's San Jose, California office, located at 3060 Olsen Drive, San Jose, California 95128, Santa Clara County.

32.     Defendant HILL is as a person within the meaning of  18 U.S.C. §1961(3), and as a person employed by said enterprise which violated 18 U.S.C. §§ 1962(c) and (d).

As Defendant LONG's HR representative, Defendant HILL conducts and/or actively participates in the ongoing scheme to fraudulently misrepresent the commissions earned and paid to the sales team and to misclassify said earned wages as retention bonuses. Defendant HILL benefited from the misrepresented earned and unpaid commissions.   At all times herein, Defendant HILL was responsible for the compliance elements and the checks and balances properly processing the payment of earned commissions.  She worked closely with Defendant LONG to set and achieve the company's sales goals.  She benefited from said fraud and misrepresentation as she received substantial cash bonuses and RSU awards for the fraudulently increased financial results.

33.    Individual Defendants O'CALLAHAN, RICHARD, MCCOWAN, SCURFIELD, CERNUDA, LONG and HILL are hereinafter referred to as "RICO Defendants."

34.    Plaintiff MCGOWAN is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 50, inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff MCGOWAN will amend this Complaint to allege their true names and capacities when ascertained.  Plaintiff MCGOWAN is informed and believes, and thereon alleges that each of these fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff MCGOWAN's injuries alleged herein were proximately caused by Defendants.

35.    Plaintiff MCGOWAN is informed and believes, and thereon alleges that at all times alleged herein each of the defendants was the agent and employee of each of the remaining defendants and, in doing the things hereinafter alleged, was acting within the course and scope of such agency or employment.

## GENERAL ALLEGATIONS

36.    Defendant NETAPP is a publicly traded company with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78*l*), and/or is required to file reports under section 15(d) of the Act (15 U.S.C. 78*o*(d)) with the Securities and Exchange Commission (SEC).  It markets and sales and/or provides

hardware and software data storage systems and technologies for use by enterprise clients, data centers and the cloud globally in all vertical industries.

37.     The company is comprised of over 10,000 employees, working throughout California, the United States and globally.  The average age is approximately forty-seven (47), however, when NETAPP reorganizes and/or eliminates job positions, management utilizes practices and policies that adversely and disproportionately affect employees in the late fifties (50s) and older, and primarily those who are Black of African-American.

38.     On September 25, 2017, Defendant NETAPP hired Plaintiff MCGOWAN as Vice President and General Manager of America Sales (VP/GM Sales) to oversee and increase sales in the eastern region.  Defendants represented to Plaintiff that he would earn an annual base salary plus incentive commissions commensurate with his skill and expertise and which is competitive for the industry.   Defendant NETAPP represented that under its commission plan incentive, Plaintiff had the opportunity to earn up to 100% of his base salary.

39.     Defendant NETAPP offered and Plaintiff accepted an annual base salary of $270,000.00 plus sales commissions compensation in accordance with the company's Fiscal Year (FY) incentive compensation plan ("Plan") which provided for an annual target incentive of $270,000.00.  At 100% performance, Plaintiff's offered and agreed total annual income was $540,000.00 plus annual merit increases.

40.     With input from the general manager of sales, each respective commission plan incentive sets forth market initiatives and sales goals for the forthcoming fiscal year and is administered on a "whole month" participation basis.  Each commission plan incentive is reviewed, approved and authorized by NETAPP's executive management team, including the president, executive vice president of field operations, senior vice president of worldwide sales and/or the geography vice president of sales.  For financial reporting purposes, NETAPP's fiscal year ends (FYE) on April 30th of each year.  For tax purposes, this is referred to as the 52-to-53-week year-end.  The incentive pay is paid after the close of each fiscal month in arrears.

41.     The target incentive was based upon Plaintiff achieving his specified goals according to the Plan.  Plaintiff received 13,000 RSUs which vested at the rate of 25% per year beginning on the first anniversary of the grant date.  Following each vesting date, Plaintiff was to receive shares of NetApp, Inc. common stock.  His VP Sales position was based in New York, so Defendant NETAPP provided MCGOWAN a relocation benefits package which allowed Plaintiff MCGOWAN to complete the move to New York by Spring 2018.

42.     Prior to his employment, the eastern region sales team frequently languished below its quarterly and annual operation goals and had undergone a series of leadership changes.  Plaintiff commenced leading and organizing the eastern team with one month remaining in the second quarter; the group had ended the 1QFY18 behind the goals for the annual operating plan ("AOP").  While commuting weekly between California and New York, as VP Sales, Plaintiff MCGOWAN rehauled the team's strategies and plans resulting in overachieving the Q3FY18 goals.  The eastern region team had recovered a significant portion of the AOP shortfall by the end of Q3FY18, continued the momentum into Q4FY18, and finished the year by exceeding the annual plan for FY18.  For the first time in over several years, the eastern region had achieved approximately $800 million in orders against a plan of about $700 million.

43.     During the course of this same fiscal period, from February 2018 to April 2018, Defendant NETAPP reorganized, based upon information and belief, its structure, finances, sales departments, accounting and other operations of the company.  During this reorganization, Defendant NETAPP transformed into three separate businesses, forming new sales roles, regions, and territories to increase sales revenues for the company and its shareholders.

44.     As Plaintiff had successfully transformed the eastern region, the following fiscal year, on May 1, 2018, management offered, and Plaintiff accepted the VP/GM Globals position for the newly formed region entitled "Globals," which consisted of both national and international territories.  It was a new role and new territory for FY19 but

utilized Plaintiff's same duties and responsibilities. Plaintiff redesigned the preliminary plan the transformation team drafted and implemented the Globals organization in the manner he opined would lead to the desired outcome. Impressively, in less than two (2) quarters, Plaintiff and his team not only produced quantitative, but also, qualitative results which exceeded the expectations of the executive leadership and cross-functional groups. Plaintiff MCGOWAN set himself and his team apart from other units of the company.

45. As Plaintiff embarked on the new role as VP/GM Globals, he no longer needed to relocate to New York. He organized the global accounts by vertical industries and led his team to develop the strategies and account plans for the top accounts in each industry including, manufacturing (auto), energy, life sciences, finance, hi-tech EDA, service providers, and retail. Plaintiff was now responsible for over a billion dollars in orders across the top 100 accounts (all Fortune 500 companies). He led the organization to exceed the goals and produced more than $50 million over the AOP. His direct supervisor was Defendant SCURFIELD.

46. On or about late April to early May 2018, Plaintiff received electronic access to Defendant NETAPP's FY19 "Incentive Compensation Plan Terms and Conditions" ("Plan FY19"). A few months later, Plaintiff MCGOWAN received electronic access to his FY19 Goal Sheet, which governed his salary and commissions for fiscal year 2019.

47. Again, as with previous years, when presenting the Plan FY19 and Goal Sheets to Plaintiff and other VP/GMs for signature, Defendant SCURFIELD and other management represented that upon meeting the respective sales goals, Plaintiff MCGOWAN and other VP/GMs would earn their respective incentive income up to and including 100% of their salaries as promised. In furtherance of the misrepresentation that Plaintiff would be fully compensated, Defendant NETAPP paid Plaintiff "recoverable draws" in an amount equivalent to 100% for the first 3 months of the fiscal year, while he

worked without a Goal Sheet.  The FY19 Goal Sheet determined the amount of the commissions Plaintiff would earn for the fiscal year.

48.     However, upon Plaintiff's receipt and review, the FY19 Plan and Goal Sheet did not fully compensate all commissions earned and misrepresented the commissions Plaintiff and other VP Globals would be paid.  The misrepresentation/ concealment existed because under his FY19 commission plan, the plan obligated Plaintiff and other VP/GMs to sell a certain dollar percentage of product but the client account contract included a client discount which reduced the sales amount, and therefore, intrinsically diminished the commissions Plaintiff and other VPs could earn. As written, Plaintiff and other VPs would never earn the incentive commission as promised.

49.     Immediately, Plaintiff MCGOWAN reported the diminished earning issue first, to his direct report, Defendant SCURFIELD, and then to SCURFIELD's direct report, Defendant RICHARD.  Both Defendants SCURFIELD and RICHARD acknowledged that the plan diminished the true commissions that Plaintiff and other VP/GMs could earn but advised Plaintiff to sign the Plan anyway.  Defendants SCURFIELD and RICHARD told Plaintiff, "[i]f we change it for you, we will have to change it for all other VP/GMs."   Defendants directed Plaintiff to sign the commission plan as worded under the representation that management would change the plan in the next fiscal year.   Defendants also told Plaintiff not to disclose the issue to other VP/GMs. Plaintiff refused to sign the plan as worded, and again requested the correction.  Plaintiff refused to sign the feigned FY19 plan as worded despite pressures Defendants SCURFIELD and RICHARD applied, and management never corrected the commission compensation issue.

50.     Instead, for each month throughout FY19, RICO Defendants excused their failure to correct the feigned FY19 plan while representing to Plaintiff that management was addressing the issue.  For an entire year, RICO Defendants retaliated against Plaintiff MCGOWAN for requesting a corrected commissions plan and for requesting proper

payment of all commissions owed.  Defendant NETAPP withheld Plaintiff's earned commissions while he continued to work and performed his duties professionally.  From August 2018 through August 2019, as Defendants denied his earned commissions during this period, he endured the economic hardship of living on less than 50% of his earned income.  RICO Defendants intentionally withheld Plaintiff's earned commission, and said conduct was so pervasive as Defendants not only denied Plaintiff all his earned commissions but also denied other VP/GMs their fully earned commissions during FY19.  In furtherance of denying the commissions, RICO Defendants misrepresented NETAPP's regulatory filings to SEC concerning its expenses and obligations regarding the fifteen (15) month period.

51.     Evidencing Defendants' further intent not to fully compensate commissions earned, during the same period as implementing the commission depressor, on or about May 23, 2019, Defendant RICHARD sent an email to over 300 employees announcing that Defendant NETAPP was invoking the Plan's "windfall" provision and would not pay "further commissions above 200% of goal attainment" based on FY19 sales.   Defendant NETAPP had agreed to pay these employees commissions above 200% of the goal attainment.  As the commissions were earned, they were wages due and payable for FY19.

52.     Additionally, as Plaintiff requested the correction to the commission plan, Plaintiff, his sales team, and several others had over-performed significantly on their FY19 goals.  The capped commission payout affected over thirty (30) employees who reported to Plaintiff and who had the highest overperformances entitling them to full overachievement commission payout levels.

53.     In response Plaintiff and other employees rallied for their payment of their fully earned commissions.  Fully earned commissions are wages which must be paid when earned.  In June 2019, Defendant NETAPP agreed to pay the commissions but in the form of a "retention bonus" to be paid over several payments to those impacted.  For each affected employee, NETAPP promised to pay, or provide securities, for amounts

equivalent to the capped amount NETAPP refused to pay those employees, in two installments during fiscal year 2020, on December 15, 2019, and June 15, 2020.

54.     Generally, a retention bonus is a sum of money a company pays to an employee to stay with the company for a specific amount of time.  Thus, if the impacted employee was not still employed when Defendant NETAPP issued the payment, the employee would not be compensated.

55.     Moreover, Defendants calculated the retention bonus below the earned commission because it knowingly failed to report the commission expense during the fiscal year in which the expense and obligation arose.  Defendants misclassified the commissions payment to avoid a restatement of earnings and potential adverse impact on the company stock as well as avoidance of scrutiny from the SEC.

56.     Regarding Plaintiff's FY19 commissions, on August 6, 2019, instead of paying Plaintiff his earned commissions monthly as agreed and as due during FY19, Defendants likewise reclassified his earnings as an opportunity to participate in a "special NetApp Go to Market Retention Program."  Under this "special program," in violation of California Labor Code §§ 210 and 223, Defendant NETAPP has failed to pay Plaintiff his earned commissions on the scheduled paydays in as Defendants divided his payment of $245,000 into two (2) separate payments of $122,500, payable on August 5, 2020, and August 5, 2021, but only if Plaintiff remained employed and was in "good standing."

57.     Consistent with the scheme to misclassify untimely paid commissions, and with the intent not to pay commissions at all, Defendants not only failed to pay Plaintiff during the period in which he earned the commissions, but more than two years after the wages had been earned.

58.     Plaintiff MCGOWAN told Defendants SCURFIELD and RICHARD as well as his human resources representative, Cynthia Brown, that his previously earned commission in the form of retention bonus was improper, unfair, and punitive retaliation. Plaintiff MCGOWAN further expressed that the subsequent withholding of 50% of his earned commission for another twelve (12) months is unreasonable.  Defendants would

be holding on to Plaintiff's earned commission for twenty-seven (27) months based on no fault of Plaintiff and all the fault of the Defendants.  Despite Plaintiff's request for full compensation and the illegality of delaying an employee's earned commissions, Defendants refused to pay Plaintiff unless he signed the letter regarding compensation. As Plaintiff had already been denied his earned commissions for over a year, he signed the payment letter under protest, duress, and stress and accepted the retention bonus as presented.

59.     In FY19, Plaintiff's goals increased to about $1.2 billion plus, but the new plan as written, precluded Plaintiff from ever earning the agreed upon commissions. During this period, Plaintiff not only met his increased goals of more than $1.2 billion, but also, led his team to exceed the goal at year end of FY19.

60.     During said performance period, Plaintiff met all objective criteria designating him as one of the top performers that qualified for the President Club.  In further discriminatory and retaliatory interference with the terms and conditions of Plaintiff's employment, Defendants SCURFIELD and RICHARD denied Plaintiff his proper position in the Club, and appointed a Caucasian male, Robert Benoit, then VP of the Systems Engineering Organization to the Club.

61.     In FY21, as a discriminatory and retaliatory tactic to interfere with Plaintiff's performance, Defendants SCURFIELD and RICHARD dismantled Plaintiff's vertical accounts and sales team.  His teams had proven to be the best performing sales team in the company across several objective metrics - revenue, growth, and average sales productivity amongst the team.  Several of Plaintiff's direct reports were reassigned to Defendant SCURFIELD who reduced these managers' respective goal requirements despite objective and reasoned business needs.  Defendant SCURFIELD, as Defendant RICHARD authorized, gave these underperformers, all white males, more senior roles and reduced their quotas.  Regarding Plaintiff, Defendant SCURFIELD denied Plaintiff due and fair-minded consideration for annual merit increases and stock grants that are usually rewarded to employees in good standing.

62.   From late FY21 and continuing through FY22, Defendant NETAPP experienced an exceptionally high turnover rate within the North America Global sales segment of the company which required numerous team reassignments.  Defendants represented to the general public that these changes to the data-centric software leader's sales organization were to better meet customer needs and power the company's next stage of growth.  However, not all changes were proactive, but rather, were by dissension of the sales team because of management's ongoing misrepresentations regarding full payment of earned commissions.

63.   First, in May 2020, Tom Whaley, a regional sales director and one of Plaintiff direct reports transferred to Defendant SCURFIELD, over-performed due to his reduced quota.  After Whaley received a substantial commission check, he resigned while poaching seven (7) employees on the same day to join a competitor.  Mid-year FY22 (around November 2021), Rich Di Gangi, Plaintiff's peer who also reported to Defendant LONG, resigned.  Mr. Di Gangi led the Financial Services + Service Providers (FSSP) team.  As 1H22 ended, Peter Srere, who led the Financial Services and Life Science (FSLS) team and a direct report to Defendant LONG, resigned creating yet another void in the organization.

64.   As these teams required reassignment, Defendant LONG approached Plaintiff advising that Plaintiff was the most skilled VP/GM of his direct reports to handle the team. Against Plaintiff's suggestion otherwise, Plaintiff agreed, advising LONG that he would manage the team, but not the FSSP and FSLS teams' quotas for T1.  Requesting Plaintiff to manage the reassigned quotas would unfairly burden Plaintiff's personal commission rate.  Defendants did not compensate Plaintiff for the newly assigned teams.

65.   Plaintiff also informed Defendant LONG that as he integrated the new re-assigned teams, he would manage the T2 (only) goals as a consolidated team goal of his old team, plus FSSP, and FSLP.  Accordingly, if Plaintiff's teams achieved the total T2 goal, then all teams earned commission payout; and vice versa.  Plaintiff applied this model to all groups he managed.   Plaintiff successfully managed his original team to be

the only VP of North America Sales, and one of a small few worldwide to exceed his T2 goals in 1HFY22.

66.     Using the team goal concept in 1H22, Plaintiff and his team over-achieved both T1 and T2 goals and were compensated their commissions. However, there was a significant portion of the company worldwide that did not achieve its T2 target so Defendant LONG and his manager Defendant CERNUNDA, based on information and belief, along with other managing agents including the executive staff reduced the T2 quotas for most of the company by 30%. Defendants LONG and CERNUNDA rewarded underperformers commissions they did not earn. Defendants denied Plaintiff and his team a similar quota reduction, and thus, discriminatorily denied the commensurate overperformance benefit for their performance. Again, Defendant NETAPP underpaid the earned commissions of Plaintiff and his team for FY22. Defendant NET APP wired Plaintiff's payment in his account.

67.     In May 2021, Defendant SCURFIELD began his newly established role of chief commercial officer. Defendant SCURFIELD became responsible for building a new GTM model and strategy including direct sales and channel coverage and to drive Defendant NETAPP's transformation of the company's digital and virtual sales teams and Sales Operations to better enable the sales force and worldwide partnerships. Based upon information and belief, Defendant received a substantial pay increase commensurate with his new position.

68.     In FY22, when Defendant LONG became Plaintiff's manager and sales goals were separated into two categories T1 (hybrid cloud) and T2 (cloud). Each team was assigned a quota, but it was recognized company-wide that there was insufficient historical data to reasonably assign individual goals to each seller. Plaintiff MCGOWAN suggested the team goal which had had a proven success record during his employment, including 1H22.

69.     As the company entered the second half of FY22, Plaintiff managed and received goals for the three teams.  Plaintiff timely advised LONG and his controller that

he would manage the new team under the successful T2 premise utilized during the first half of FY22.  The controller okayed the approach, and Defendant LONG did not deny Plaintiff's request.

70.     At the end of the reporting period, Plaintiff's teams, original and FSSP teams had underachieved about $300,000.00, but the newly assigned FSLS team overachieved creating a consolidated result above the T2 goal.  Accordingly, under Plaintiff's submitted team goal method, Plaintiff and his teams earned their respective commissions.  Again, Defendants denied Plaintiff and eighty-nine (89) individuals on his original and FLSP teams their earned commissions under the basis that their goal sheets were inaccurate.

71.     On or about May 1, 2022, Plaintiff MCGOWAN complained to Defendant LONG regarding Defendant NETAPP's payout plan.  Defendant LONG had reassigned all teams to Plaintiff.  Yet, under RICO Defendants' common scheme to avoid paying all commissions earned, never consolidated on the goal sheets, and had used different goal sheets for each team assigned to Plaintiff.  As the sales team understood they had been denied their respective earned commissions, they were also in an uproar.

72.     Ninety (90) days thereafter, Defendant NETAPP agreed to pay the commissions the sales team had earned in the prior quarter under the guise of a retention bonus.  RICO Defendants use this two-phase retention bonus structure to conceal their intentional failure to timely pay commissions owed when the commission expense occurred.  Defendant NETAPP and other executive staff have engineered this method to avoid paying the respective commission expenses in the year the expenses were incurred and this has an impact of inflating Defendant NETAPP's reported earnings to the public market.  RICO Defendants misrepresent the form of payment and fail to fully compensate for the actual commission earned.  Defendant NETAPP intentionally denies its employees their respective earned commission and misrepresents the profitability of the company to the SEC and the shareholders by falsely reporting the expense obligation as

another form during a different payment period.  Defendants have used the practice at least two different times within the last four years.

73.     On or about August 1, 2022, Defendant LONG told Plaintiff that except for him (MCGOWAN), Defendant NETAPP would pay retention bonuses to the eighty-nine (89) impacted sales employees in lieu of the earned, unpaid commissions.  Plaintiff MCGOWAN had met all objective criteria to earn and did earn commissions in the amount of $153,000.00.  Yet, again, in violation of California labor laws, Defendants denied Plaintiff his earned commissions "because someone must be accountable for Defendants' error."  RICO Defendants denied and delayed paying earned commissions when the obligation arose regarding T2 and Morgan Stanley situations and was now using it as a basis to retaliate and discriminate against Plaintiff.

74.     Consistent with RICO Defendants' ongoing fraudulent commissions scheme, Defendants again withheld his earned commissions.  Plaintiff advised LONG that it was illegal to deny his earned commissions, that he (Plaintiff) was not responsible for the error, and where was his (LONG's) accountability and the accountability of sales operations, finance, and HR management for ensuring that the goals were properly inserted into the goal sheet.  Defendant LONG did not respond to Plaintiff's complaints, and no other HR representative addressed or investigated Plaintiff's concerns.

75.     Instead, after Plaintiff was again forced to advocate for his and his sales team's earned, but unpaid commissions and within twenty-two (22) days of complaining about the illegality of Defendants ongoing conduct, on August 23, 2022, under the guise that he (LONG) and Plaintiff "were not coming together," Defendant NETAPP retaliatorily and discriminatorily terminated Plaintiff's employment.

76.     Plaintiff MCGOWAN delivered the company's innovations and transformational technologies (e.g., Cloud, AI, IoT) to his client segment and directly produced company bookings that exceeded $1.5 billion in FY'22.  Plaintiff's bookings represented approximately 27% of the company's total bookings.

77.     For the same period, NETAPP generated more than $5.5 billion dollars in bookings, derived from interstate and international sales of its systems and technological products.  All income derived from interstate and international commerce is to be reported on IRS Form 1120, a corporate income tax return form.  NETAPP collects gross income from foreign sources including dividends, royalties, interest, and sales income. All expenses and obligations are to be captured when the obligation arises.

78.     On August 23, 2023, within three years of the date in which the last incident of discrimination occurred, Plaintiff filed a Charge with the Department of Fair Employment and Housing ("DFEH") alleging discrimination and harassment based upon his race and national origin.  A true and correct copy of the DFEH charge is attached as Exhibit "A."

79.     On August 23, 2023, the DFEH issued to Plaintiff a notice of a right to bring a civil action based on the charge.  A true and correct copy of the Right to Sue Notice is attached as Exhibit "B."

### RICO ALLEGATIONS

80.     Plaintiff MCGOWAN complains against Defendants RICHARD, MCCOWAN, O'CALLAHAN, SCURFIELD, CERNUDA, LONG and HILL, and DOES 1 through 25, inclusive, and realleges the allegations contained in Paragraphs 1 through 69 and incorporates them by reference into this count as though fully set forth herein.

81.     Section 1962, entitled "Prohibited Activities," outlaws the use of income derived from a "pattern of racketeering activity" to acquire an interest in or establish an enterprise engaged in or affecting interstate commerce; the acquisition or maintenance of any interest in an enterprise "through" a pattern of racketeering activity; conducting or participating in the conduct of an enterprise through a pattern of racketeering activity; and conspiring to violate any of these provisions.

82.     Each RICO Defendant acted in concert with each other and came to a mutual understanding that payment of commissions was and continues to be Defendant NETAPP's highest operating expense.  However, as Plaintiff MCGOWAN's and the

sales team's compensation was commensurate with their respective skill and expertise in the industry, Defendants knew salary and/or commission reduction would make the company less competitive in maintaining its team.  Based upon information and belief, RICO Defendants, knowing management controlled the commission payments through the company's annual commissions plans, reconciled that they would manipulate the plans to reduce the commissions without disclosing the reduction intent to the sales team.

83.     Therefore, despite violation of various state and federal labor laws and fraudulent representations to the sales team, in or about 2018, Defendants RICHARD, SCURFIELD and HR management conspired with other current directors, officers, managing agents, and upper-level supervisors to concoct the fraudulent commissions scheme to methodically deny the sales team's commissions earned without disclosing Defendants' intent to deny the earned commissions.  Under the scheme, Defendants repeatedly failed to pay all commissions owed, and because of Plaintiff's reports and ongoing advocacy for proper and full compensation, Defendant NETAPP was forced to pay back commissions owed.  To date, Defendant NETAPP continues to owe Plaintiff MCGOWAN an amount exceeding $153,000.

84.     In furtherance of concealing RICO Defendants' fraudulent scheme, Defendant RICHARD in concert with HR management and co-Defendants misclassified said delayed and untimely payments of previously earned commissions (wages) as retention bonuses in subsequent quarters on regulatory filings to SEC that should have been an allocated expense in prior quarters.

85.     Defendant RICHARD, at the executive level, along with Defendant SCURFIELD, created the sales strategy for the company and managed its sales priorities to set and achieve the company's sales goals.

86.     In increasing company revenues, NETAPP executives, directors, officers and managing agents, including named Defendants RICHARD, O'CALLAHAN and MCCOWAN, while acting in the course and scope of their respective management relationship with Defendant NETAPP, met, agreed, and conspired to modify

disbursement of the employee annual incentive commission plan to disperse less commissions owed to employees than they earn.

87.   Based upon information and belief, these conspiring executives, directors, officers and managing agents created incentive commission plans under the false pretense that Plaintiff MCGOWAN and other commission earning employees, including other VP/GMs, had the opportunity to maximize their respective commission earnings based upon meeting specified sales goals.  Having implemented a masked commission depressor, RICO Defendants knowingly induced Plaintiff and others to meet and surpass the specified sales goals but RICO Defendants had no intention of paying the promised commissions at the time they were earned, and on at least two separate occasions, did not pay the commissions earned.

88.   In 2018, Defendants O'CALLAHAN and RICHARD and others at the executive level initiated the fraudulent scheme and presented said scheme to Defendant SCURFIELD and other SVPGs to distribute to their respective sales team.  While acting in his position as SVPG in the course and scope of his employment relationship with Defendant NETAPP, Defendant SCURFIELD distributed commission plans for FY19 and FY20 to his sales team.  Based upon information and belief, Defendant SCURFIELD knew not only that the plans reduced the commissions but knew also that management intended to deny or delay the commissions so it could reduce its operating expenses for various fiscal quarters and/or years.

89.   Based upon information and belief, Defendants O'CALLAHAN and RICHARD acclimated Defendant MCCOWAN, upon her appointment as CHRO in October 2018, to the work environment as well as the need to streamline its core business and reduce operating expenses without losing its competitive edge.  Defendants O'CALLAHAN and RICHARD introduced MCCOWAN to its ongoing scheme to reduce commissions without disclosing the true facts to the sales team, and Defendant MCCOWAN, while acting in her position as CHRO in the course and scope of her employment relationship with Defendant NETAPP, implemented said ongoing scheme

with full knowledge that the sales team's earned commissions were wages that should have been paid when earned.  Defendant MCCOWAN authorized the delayed payment and/or denial of the commissions owed to Plaintiff and others, knowing that said conduct was in violation of labor laws as well as fraud.

90.     After Defendant CERNUDA's appointment to NETAPP's executive level as PWWS, Plaintiff alleges that in May 2020, Defendant SCURFIELD and NETAPP's executive level acclimated Defendant CERNUDA to the company culture and policy to streamline its core business and reduce operating expenses without losing its competitive edge.  Defendant CERNUDA was introduced to the ongoing scheme to reduce commissions without disclosing the true facts to the sales team, and Defendant CERNUDA, while acting in his position as PWWS in the course and scope of his employment relationship with Defendant NETAPP, implemented said ongoing scheme with full knowledge that the sales team's earned commissions were wages that should have been paid when earned.  Defendant CERNUDA authorized the delayed and/or denial of the commissions owed to Plaintiff and others, knowing that said conduct was in violation of labor laws as well as fraud and authorized Plaintiff's retaliatory and discriminatory termination.

91.     After Defendant SCURFIELD's promotion, Defendant LONG, as SVPNA, became Plaintiff's supervisor.  Accordingly, Defendant SCURFIELD acclimated Defendant LONG to the company culture and policy to streamline its core business and reduce operating expenses without losing its competitive edge.  Plaintiff alleges that Defendant SCURFIELD not only introduced LONG to the ongoing scheme to reduce commissions without disclosing the true facts to the sales team, but also, advised him of Plaintiff's ongoing advocacy for fair, prompt and full payment of earned commissions for himself and the sales team.  Defendant LONG, while acting in his position as SVPNA in the course and scope of his employment relationship with Defendant NETAPP, implemented said ongoing scheme with full knowledge that the sales team's earned

commissions were wages that should have been paid when earned and instigated Plaintiff's retaliatory and discriminatory termination.

92.     At all times herein, Defendant HILL was responsible for the compliance elements and the checks and balances properly processing the payment of earned commissions.  She worked closely with Defendant LONG to set and achieve the company's sales goals.  She participated in and authorized Plaintiff's retaliatory and discriminatory termination.

93.     RICO liability exists as corrupt and fraudulent conduct occurred at managerial levels.  The illegal conduct takes place "at such a high level that evidences corporate policy to promote or engage in illegal conduct."  Defendant NETAPP's high level officials were involved in the underlying scheme which was so pervasive as RICO Defendants routinely denied paying the full commissions earned, paid commissions more than two-years after they were earned, and misclassified the payment as a retention bonus to disguise and misrepresent the untimely paid commissions in Defendant NETAPP's reports to the SEC.

94.     As detailed above, Defendant NETAPP has received income derived, directly or indirectly, from a pattern of racketeering activity, and has used or invested, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.  Defendant NETAPP is liable as a PERSON for those acts in violation of 18 U.S.C. § 1962(a).

95.     As detailed above, Defendants RICHARD, O'CALLAHAN, MCCOWAN, SCURFIELD, CERNUDA, LONG and HILL conducted or participated in the conduct of an enterprise, NETAPP, through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

96.     Alternatively, the RICO Defendants, through an agreement to commit two or more predicate acts, conspired to conduct or participate in the conduct of an enterprise, NETAPP, through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d).

The actions of the RICO Defendants as against Plaintiff, and as described above, were in furtherance of the RICO Defendants' conspiracy and in violation of 18 U.S.C. § 1962(d).

97.     Civil RICO claim, appellants must show that Defendants' violation of Section 1962 was the proximate cause of their injury.

## THE ENTERPRISE

98.     NETAPP is an ongoing organization with a corporate structure for making or carrying out decisions.  Its members and/or employees function as a continuing unit with established duties to carry out the RICO Defendants fraudulent scheme.  Thus, NETAPP was and is the instrument of the RICO Defendants' racketeering activity and constitutes an "enterprise" as that term is defined in 18 U.S.C. § 1961(4), separate and distinct from the individual RICO Defendants RICHARD, O'CALLAHAN, MCCOWAN, SCURFIELD, CERNUDA, LONG and HILL, named herein.

99.     From sometime 2018 and continuing through the present, the RICO Defendants, as well as others known or unknown, persons employed by and associated with NETAPP, which was and is engaged in and the activities of which affected and affect interstate commerce, unlawfully and knowingly conducted or participated, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity, that is, through the commission of two or more racketeering acts set forth herein.

100.     Plaintiff seeks to prohibit the RICO Defendants from utilizing the pattern of unlawful conduct in which they have continually engaged during the relevant time period.

101.     The pattern of racketeering engaged in by the RICO Defendants involved at least two separate but related acts of racketeering activity, carried out from approximately May 2018, through the present.

102.     Plaintiff took steps to prevent said fraudulent scheme, and because of his retaliatory termination, he was directly injured by the RICO Defendants' acts of racketeering activity.

## PREDICATE ACTS & THE PATTERN
## OF RACKETEERING ACTIVITY

103.     Section 1961(1) of RICO provides that "racketeering activity" includes any act indictable under 18 U.S.C. § 1341 (relating to mail fraud) and 18 U.S.C. § 1343 (relating to wire fraud).  As set forth below, the RICO Defendants engaged in conduct violating 18 U.S.C. §§ 1341 and 1343 to effectuate their unlawful scheme.

104.     A "pattern" of racketeering activity is shown when a racketeer commits at least two distinct but related predicate acts.

105.     Sections 18 U.S.C. §§ 1341 and 1343 share identical language in providing that those who act "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises ... shall be fined or imprisoned not more than twenty (20) years or both. ..."  18 U.S.C. § 1341; Id. § 1343; see, United States v. Bohonus, 628 F.2d 1167.

106.     The RICO Defendants' acts were not isolated, but rather formed a pattern of conduct through which the RICO Defendants used the enterprise, NETAPP, to defraud the NETAPP employees, shareholders, and SEC and to silence Plaintiff from complaining about and exposing such illegal and fraudulent acts.

107.     The acts performed by Defendants RICHARD, O'CALLAHAN, MCCOWAN, SCURFIELD, CERNUDA, LONG and HILL are related as they apply to Plaintiff.  They have the same purpose, result, victim and method of execution. Defendants acted in concert to manipulate the calculation of sales performance and commissions and the account assignment functions so that Plaintiff's earned commissions would be denied and/or delayed while executive level receive full bonus compensation not justified by their sales performance.

108.     Defendants RICHARD, O'CALLAHAN, MCCOWAN, SCURFIELD, CERNUDA, LONG and HILL violated and continued to violate RICO by joining

together in a conspiracy to deceive employees about their earnings and misrepresent to shareholders and SEC company revenue and expenses.  Defendant NETAPP uses the income or proceeds from the pattern of racketeering activity to maintain the enterprise engaged in interstate commerce.  Specifically, the pattern of the RICO Defendants' illegal racketeering activity, as defined by 18 U.S.C. § 1961(1) (3), (4) and (5) and 18 U.S.C. §§ 1341 and 1343 are based on the following facts:

a.      During Defendant NETAPP's 2018 reorganization, the company transformed into three separate businesses of which Globals was formed and managed by its own separate executive level.  For Globals, Defendant NETAPP formed new sales roles, regions, and territories to increase sales revenues for the company and its shareholders.  Defendants also sought to streamline its core business and reduce expenses.

b.      The company's executive staff including Defendants O'CALLAHAN and RICHARD and the Globals sales management team, consisting of SCURFIELD and other SVPs met, discussed, and concocted an annual commission plan designed to pay the Globals sales team less commissions than earned (Plan FY19). Based upon information and belief, Defendants had disclosed in its regulatory filing for FY19 that it would reduce expenses.

c.      Defendant RICHARD, at the executive level, along with Defendant SCURFIELD, created the sales strategy for the company and managed its sales priorities to set and achieve the company's sales goals.  Plaintiff alleges that Defendant O'CALLAHAN assisted with legal matters pertaining to the scheme and was subsequently appointed to CLO.

d.      Consistent with said regulatory filing, Defendants O'CALLAHAN, RICHARD and SCURFIELD designed Plan FY19 to automatically decrease the commissions earned by Plaintiff and other VP/GMs despite their sales, which as Defendants intended, decreased reportable expenses.  Defendants did not disclose to Plaintiff or the other VP/GMs that Plan FY19 intrinsically diminished the commissions

they could earn.  Instead, Defendants issued the plan while misrepresenting to Plaintiff or the other VP/GMs that they would earn 100% commissions as promised.  As written, Plaintiff and other VPs would never earn the incentive commission as promised.

e.    In accordance with the misrepresentations, Defendants distributed and had already implemented Plan FY19 for sales team who received the plan and who signed off on the plan without question.  The sales team worked for an entire year under Plan FY19, wherein Defendants O'CALLAHAN, RICHARD, SCURFIELD and MCCOWAN, after she joined NETAPP in October 2018, intentionally failed to pay the sales team all commissions earned.  Defendants wired the deficient monthly commissions payment into the sales team respective accounts each month in violation of 18 U.S.C. § 1343.

f.    Based upon information and belief, Defendants completed NETAPP's regulatory filing for FY19, failing to report all commissions owed to the sales team, and therefore, created the false representation that Defendant NETAPP had decreased its expenses, creating the false representation that NETAPP had more revenue than actually reported.  The regulatory filing containing the misrepresented expenses was, based upon information and belief wired and mailed to the SEC in violation of 18 U.S.C. §§ 1341 and 1343.

g.    To continue reducing operating expenses, without disclosing their intentions to the sales team, for the following year, Defendants O'CALLAHAN, RICHARD, SCURFIELD and MCCOWAN issued the same commissions plan for FY20 (Plan FY20) as Plan FY19.  Consistent with the prior year, Plan FY20 misrepresented the commissions that sales staff would earn despite exceeding the specified goal.

h.    On or about May 2019, RICO Defendant SCURFIELD presented Plaintiff with Plan FY20.  Shortly after receipt, Plaintiff reported first to Defendant SCURFIELD that the plan as written reduced the sales team's earned commissions. Thereafter, as Defendant SCURFIELD sought assistance from Defendant RICHARDS, Plaintiff explained to both Defendants that Plan FY20 failed to fully compensate for all

wages earned and that despite selling at 100% capacity, the sales team would not be fully compensated.

   i. Defendants SCURFIELD and RICHARDS acknowledged the reduced payment but told Plaintiff MCGOWAN that if Plan FY19 was changed for Plaintiff, Defendant would have to change the plan for other sales team staff.

   j. Defendants SCURFIELD and RICHARDS told Plaintiff to simply sign Plan FY19 and that it would be corrected in the next fiscal year.  As Defendants planned and schemed to pay staff reduced commissions, RICO Defendants delayed paying commissions earned as intended.

   k. Plaintiff refused to sign the uncorrected FY20 commissions plan so in retaliation, Defendants failed to pay commission more than two (2) years after they were earned.

   l. Plaintiff's goals increased to about $1.2 billion plus.  Plaintiff worked professionally and during FY20, Plaintiff not only met his increased goals, but also, led his team to exceed the goal by more than $100 million at year end of FY20.

   m. RICO Defendants routinely used a two-phase retention bonus structure to conceal their intentional failure to timely pay commissions owed when the commission expense occurred.

   n. When Plaintiff received his untimely paid commissions, it was wired into his account.

   o. On August 23, 2022, Defendants violated SOX when NETAPP terminated Plaintiff MCGOWAN's employment for reported that Defendants illegally withheld his commissions and that it was improper to misclassify untimely paid commissions as a retention bonus.

///
///
///
///

**COUNT ONE**

**(VIOLATION OF RICO 18 U.S.C. § 1962(a))**

**Against All Defendants**

109.    Plaintiff MCGOWAN complains against all Defendants and DOES 1 through 50, inclusive, and realleges all allegations contained in Paragraphs 1 through 108 and incorporates them by reference into this count as though fully set forth herein.

110.    Section 1962(a) of RICO provides that "it shall be unlawful for any person to use of income or proceeds from a pattern of racketeering activity by a principal in that activity to acquire an interest in or to establish an enterprise engaged in interstate commerce...."

111.    At all relevant times, the union constituted an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(a), in that it was and is a business

112.    As set forth above, NETAPP is the enterprise that engages in interstate and foreign commerce and receives income and proceeds from a pattern of racketeering activity.

113.    As alleged with particularity above, the facts demonstrate that NETAPP used income or proceeds from a pattern of racketeering activity by a principal in that activity to acquire an interest in or to establish an enterprise engaged in interstate commerce.

114.    As alleged with particularity above, as a direct and proximate result of the RICO Defendants' aforementioned RICO conduct, Plaintiff's lawful employment and livelihood have been irreparably damaged.

115.     As alleged with particularity above, the RICO Defendants are jointly and severally liable to Plaintiff for treble damages, together with all costs for this action, plus reasonable attorneys' fees as provided by 18 U.S.C. § 1964.

116.    To the extent permitted by law, Plaintiff is entitled to damages, plus court costs, and pre- and post-judgment interest at the legally allowable limit.

### COUNT TWO

**(VIOLATION OF RICO 18 U.S.C. § 1962(c))**

**Against Defendants RICHARD, MCCOWAN, O'CALLAHAN,**

**CERNUDA, SCURFIELD, LONG and HILL**

117.   Plaintiff MCGOWAN complains against the RICO Defendants and DOES 1 through 25, inclusive, and realleges all allegations contained in Paragraphs 1 through 108 and incorporates them by reference into this count as though fully set forth herein.

118.   Section 1962(c) of RICO provides that "it shall be unlawful for any person employed by...any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...."

119.   As set forth above, the RICO Defendants are employed by an enterprise, NETAPP, which engages in interstate and foreign commerce.

120.   As set forth above, the RICO Defendants, as employees of the enterprise, used their positions with NETAPP to conduct or participate, directly or indirectly, in the conduct of NETAPP's affairs through a pattern of racketeering activity.

121.   As set forth herein, the RICO Defendants' pattern of racketeering activity is comprised of predicate acts including wire fraud, tampering and retaliation.

122.   As set forth above, the pattern of racketeering activity engaged-in by the RICO Defendants was for the common purpose of concealing and benefitting from the intentional failure to properly and timely pay employees all commissions earned, and to silence Plaintiff from exposing that concealment.

123.   As alleged with particularity above, the facts demonstrate that the RICO Defendants willingly and knowingly conducted or participated, directly or directly, in the conduct of NETAPP's affairs through a pattern of racketeering activity.

124.   As alleged with particularity above, as a direct and proximate result of the RICO Defendants' aforementioned RICO conduct, Plaintiff's lawful employment and livelihood have been irreparably damaged.

125.    As alleged with particularity above, the RICO Defendants are jointly and severally liable to Plaintiff for treble damages, together with all costs for this action, plus reasonable attorneys' fees as provided by 18 U.S.C. § 1964.

126.    To the extent permitted by law, Plaintiff is entitled to damages, plus court costs, and pre- and post-judgment interest at the legally allowable limit.

## COUNT THREE

### (VIOLATION OF RICO 18 U.S.C. § 1962(d))

### Against Defendants RICHARD, MCCOWAN, O'CALLAHAN,
### CERNUDA, SCURFIELD, LONG and HILL

127.    Plaintiff MCGOWAN complains against RICO Defendants and DOES 1 through 25, inclusive, and realleges all the allegations contained in Paragraphs 1 through 118 and incorporates them by reference into this count as though fully set forth herein.

128.    Section 1962(d) of RICO makes it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."

129.    The RICO Defendants' conspiracy to conceal and benefit from erroneously-provided federal tax credits, to defraud the United States consumers through that concealment, and to silence Plaintiff from exposing that concealment, as described above, violates 18 U.S.C. § 1962(d).

130.    Each RICO Defendant agreed to participate, directly or indirectly, in the conduct of the affairs of NETAPP through a pattern of racketeering activity comprised of numerous acts of mail fraud, tampering and retaliation, and each RICO Defendant so participated in violation of 18 U.S.C. § 1962(c).

131.    As alleged with particularity above, the facts demonstrate that the RICO Defendants conspired to violate 18 U.S.C. § 1962(c) by conducting, or participating directly or indirectly in the conduct of, the affairs of NETAPP through a pattern of racketeering activity.

132.    As alleged with particularity above, as a direct and proximate result of the RICO Defendants' aforementioned RICO conduct, Plaintiff's lawful employment and

livelihood have been irreparably damaged.

133.    As alleged with particularity above, the RICO Defendants are jointly and severally liable to Plaintiff for treble damages, together with all costs for this action, plus reasonable attorneys' fees as provided by 18 U.S.C. § 1964.

134.    To the extent permitted by law, Plaintiff is entitled to damages, plus court costs, and pre- and post-judgment interest at the legally allowable limit.

## COUNT FOUR

### (BREACH OF CONTRACT)

### Against Defendant NETAPP Only

135.    Plaintiff MCGOWAN complains against Defendant NETAPP and DOES 1 through 25, inclusive, and realleges all the allegations contained in Paragraphs 1 through 134 and incorporates them by reference into this count as though fully set forth herein.

136.    On or about September 2017, Defendant NETAPP and Plaintiff MCGOWAN entered into a valid written contract that during Plaintiff's employment, Defendant NETAPP would pay Plaintiff a base salary plus commission.

137.    Defendant NETAPP offered and Plaintiff accepted a compensatory package consisting of an annual base salary of $270,000.00 plus sales commissions compensation in accordance with the company's Fiscal Year (FY) incentive compensation plan ("Plan") which provided for an annual target incentive of $270,000.00.  At 100% performance, Plaintiff's offered and agreed total annual income was $540,000.00 plus annual merit increases.

138.    In exchange for the annual base salary, commissions, and benefits, Plaintiff MCGOWAN was obligated to deliver the company's innovations and transformational technologies to his client segment consisting of global accounts by vertical industries for manufacturing (auto), energy, life sciences, finance, hi-tech EDA, service providers, and retail.  Plaintiff handled over a billion dollars in orders across the top 100 accounts (all Fortune 500 companies) and directly produced company bookings.

139.    Plaintiff MCGOWAN continued to work and performed his duties professionally and fully earned commissions in the amount of $245,000.00 from May 2019 through August 2020.  Plaintiff MCGOWAN performed all conditions, covenants, and promises required to be performed in accordance with the terms and conditions of the agreement, including subsequent commissions plans. Indeed, Plaintiff over-performed. bookings that exceeded $1.5 billion in FY'22.  Plaintiff's bookings represented approximately 27% of the company's total bookings.

140.    Defendant NETAPP, by and through Defendants RICHARD, SCURFIELD, and LONG, the executive staff, other individual defendants, other managing agents, directors, and officers, breached the agreement by engaging in intentional acts to steal earned commissions from Plaintiff and his colleagues.  These alleged acts include "back-dooring" sales by negotiating customers incentives without accounting for sales, discriminatorily applying reduced quotas requirements without fairly paying commission overages, refusing to correct benign plans that fail to fully compensate all earned commissions, untimely and unfairly denying earned commissions, refusing to sign off agreed upon commissions plans and/or modifying commissions plans after Plaintiffs and others properly earn commissions and reversing Plaintiff's commissions for sales made months and years earlier, and terminating Plaintiff to avoid paying all commissions earned during his employment.

141.    As a foreseeable result of Defendant NETAPP's actions, Plaintiff suffered further general damages in an amount which is currently unknown, but which will be proved upon the trial or other disposition of this action. Such injuries and damages include, but are not limited to, the damages suffered in an amount exceeding $153,000.00, according to proof.

142.    Plaintiff seeks specific performance of the contract.

143.    WHEREFORE, Plaintiff request relief as hereinafter provided.

///
///

## COUNT FIVE

### (BREACH OF IMPLIED COVENANT OF GOOD

### FAITH AND FAIR DEALING)

#### Against Defendant NETAPP Only

144.   Plaintiff MCGOWAN complains against Defendant NETAPP only and DOES 1 through 25, inclusive, and realleges all the allegations contained in Paragraphs 1 through 143 and incorporates them by reference into this count as though fully set forth herein.

145.   The covenant of good faith and fair dealing is implied in every contract.

146.   Defendant NETAPP, by and through Defendants RICHARD, SCURFIELD, and LONG, the executive staff, other individual defendants, other managing agents, directors, and officers, unfairly interfered with Plaintiff MCGOWAN's right to receive his commissions under the agreement.

147.   As a foreseeable result of Defendant NETAPP's actions, Plaintiff suffered further general damages in an amount which is currently unknown, but which will be proved upon the trial or other disposition of this action. Such injuries and damages include, but are not limited to, the damages suffered in an amount exceeding $153,000.00, according to proof.

148.   As a controversy exists, Plaintiff is entitled to declaratory relief.

149.   WHEREFORE, Plaintiff request relief as hereinafter provided.

## COUNT SIX

### (FRAUD)

#### Against All Defendants

150.   Plaintiff MCGOWAN complains against Defendants NETAPP, RICHARD, O'CALLAHAN, MCCOWAN, SCURFIELD, CERNUDA, LONG and HILL and DOES 1 through 50, inclusive, and realleges all the allegations contained in Paragraphs 1 through 149 and incorporates them by reference into this count as though fully set forth herein.

151.    Upon Plaintiff's hire on about September 2017, Defendants represented to Plaintiff MCGOWAN that if he performed at 100%, he would earn commissions of $270,000.00 in addition to his base salary.  Said representation was false.

152.    Plaintiff MCGOWAN alleges that on or about May 2018, and continuing through the present regarding current employees, Defendant NETAPP's executive management team has manipulated the annual incentive plan which dictates the sales team's commission compensation with the specific intent to deny and/or delay payment of Plaintiff's commission earned and the earned commissions of other members of the sales team.

153.    In furtherance of said fraudulent scheme, on or about May 1, 2018, Defendants RICHARD, O'CALLAHAN, MCCOWAN and SCURFIELD drafted and created the feigned commissions' package and presented it to Plaintiff and other members of Defendant NETAPP's sales force.  Each of the other sales member's compensation package was dependent upon his or her respective salary.

154.    However, unbeknownst to Plaintiff, Defendants did not intend to compensate him for his sales and the Agreement, itself, was a ruse that Defendants craftily designed to reduce Plaintiff's earned commissions.   Defendants, and each of them, knew that the representations made to Plaintiff were false, in that Defendants drafted the agreement without establishing a method and/or procedure to pay out the earned commissions as Plaintiff and other employees reasonably believed they would receive.  As Defendants provided no basis to compensate Plaintiff, they had no intention of compensating Plaintiff according to his sales.

155.    Defendants intended that Plaintiff rely on the false representations so that Plaintiff would continue selling and increasing Defendant NETAPP's profits.  And as commission agreements are standard in employment relations, Plaintiff's reliance was reasonable.  Plaintiff performed all duties and responsibilities required under his position as a sales representative and in accordance with the terms of the Agreement.

156.    Plaintiff reasonably relied on Defendants' promises to pay commissions on his sales in accordance with the terms in the Agreement and performed his duties.

157.    In furtherance of this scheme, each year thereafter, Defendants RICHARD, O'CALLAHAN, MCCOWAN and SCURFIELD delayed paying Plaintiff his earned commissions until August 5, 2021, requiring him to remain employed to collect said wages that he had earned in 2018-2019.  As Defendants bragged about the success of the misclassification of Plaintiff's previously earned commissions as a "special NetApp Go to Market Retention Program," Defendants continued this practice when Defendant LONG, along with Defendants O'CALLAHAN, MCCOWAN, CERNUDA, HILL and SCURFIELD denied his earned commissions in May 2022, and then terminated his employment on August 23, 2022, effective September 1, 2022.

158.    As a proximate result of Defendants' false promises with no intent to pay all earned commissions, as alleged above, Plaintiff has incurred damages in that Defendant NETAPP owes Plaintiff more than $153,000.00 in unpaid commissions.  As a result of Defendants' fraud and misrepresentation, Plaintiff has suffered damages in an amount according to proof.

159.    Defendants RICHARD, O'CALLAHAN, MCCOWAN, SCURFIELD, CERNUDA, LONG and HILL acted with malice, in reckless disregard of Plaintiff' rights by intending to cause injury to Plaintiff.  Defendants fraudulently represented to Plaintiff that he would receive commissions on his sales when Defendants had intent that he be paid.  Defendants' conduct was deliberate, malicious, fraudulent, oppressive and in reckless regard of Plaintiff' rights under California Civil Code §3294.  Accordingly, Plaintiff is entitled to punitive and exemplary damages against Defendants RICHARD, O'CALLAHAN, MCCOWAN, SCURFIELD, CERNUDA, LONG and HILL in an amount sufficient to punish Defendants for such malicious and oppressive conduct.

160.    Defendants RICHARD, O'CALLAHAN, MCCOWAN, SCURFIELD, CERNUDA, LONG and HILL make decisions on Defendant NETAPP's behalf and regarding all employees nationwide that are binding on the corporation.  Defendants

conspired, drafted and created a fraudulent commission agreement in order to reduce Plaintiff MCGOWAN's salary with the knowing intent to deprive him of his earned commissions and wages.  Each defendant ratified the conduct of the other, and when Plaintiff continued to complain, Defendant used their respective positions to retaliate against Plaintiff to create a diversion from paying Plaintiff his earned commissions.

161.    Defendants RICHARD, O'CALLAHAN, MCCOWAN, SCURFIELD, CERNUDA, LONG and HILL are managing agents, officers and/or directors of Defendant NETAPP.    The conduct of Defendants RICHARD, O'CALLAHAN, MCCOWAN, SCURFIELD, CERNUDA, LONG and HILL was deliberate, malicious, fraudulent and oppressive, and in reckless disregard of Plaintiff's rights under California *Civil Code* § 3294.  Plaintiff is entitled to punitive and exemplary damages against Defendant NETAPP in an amount sufficient to punish Defendant for such malicious and oppressive conduct.

162.    WHEREFORE, Plaintiff request relief as hereinafter provided.

## COUNT SEVEN

### (RETALIATION IN VIOLATION OF LABOR CODE § 1102.5(b))

### Against Defendant NETAPP only

163.    Plaintiff MCGOWAN complains against Defendant NETAPP and DOES 1 through 25, inclusive, and Plaintiff MCGOWAN realleges all the allegations contained in Paragraphs 1 through 162 and incorporates the respective allegations by reference into this count as though fully set forth herein.

164.    Labor Code § 1102.5(b) provides that "[a]n employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the

employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

165.   Plaintiff MCGOWAN was employed by Defendant NETAPP, Plaintiff MCGOWAN as the VP/GM Sales and then the VP/GM Globals to sell product to the top global strategic clients in all vertical industries globally including cloud hyperscalers and service providers, healthcare, life sciences, financial services, manufacturing (auto and eda), energy and media & entertainment in North America, Asia Pacific, Latin America, Europe, Middle East, and Africa.

166.   At 100% performance, Defendant NETAPP agreed to timely pay all commissions earned, at the time they were earned.  Noticing the discrepancies regarding the commissions, Plaintiff MCGOWAN, from May 2018 through his termination, not only repeatedly reported the violations to management, including Defendants RICHARD, SCURFIELD, and LONG, but also, directed Defendant on how to avoid the issues. Despite Plaintiff's continued complaints, Defendants delayed and denied paying Plaintiff, and ultimately terminated him on August 23, 2022, advising him that "someone had to pay" for upper managements mistakes of failing to pay commission.

167.   In violation of Labor Code § 1102.5(b), Defendant NETAPP retaliated against Plaintiff by terminating him because he repeatedly challenged NETAPP management failure to timely and fully pay commissions earned at the time Plaintiff earned said commissions.  Moreover, Plaintiff challenged payment of the earned commissions in the form of a retention bonus as it concealed and misrepresented to the SEC that Defendant NETAPP engaged in a pattern and practice of delaying and failing to pay commissions when the obligation arose.

168.   NETAPP human resources and management have authority to investigate, discover, or correct the violation and/or noncompliance of Defendants' conduct regarding the commission earnings and payment.

169.   Defendants' retaliatory actions against Plaintiff, as alleged above, constituted unlawful retaliation in violation of <u>Labor Code</u> §1102.5(b).

170.   As a proximate result of Defendant NETAPP's retaliatory conduct, by and through Defendants RICHARD, O'CALLAHAN, MCCOWAN, SCURFIELD, CERNUDA, LONG and HILL, against Plaintiff MCGOWAN, as alleged above, Plaintiff has suffered loss of his salary and commissions, benefits and additional amounts of compensation he would have received if Defendant NETAPP, by and through Defendants RICHARD, O'CALLAHAN, MCCOWAN, SCURFIELD, CERNUDA, LONG and HILL, would not have terminated him.  As a result of such retaliatory and consequent harm, Plaintiff MCGOWAN has suffered such damages in an amount according to proof.

171.   As a further proximate result of Defendants' retaliatory actions, by and through Defendants RICHARD, O'CALLAHAN, MCCOWAN, SCURFIELD, CERNUDA, LONG and HILL, against Plaintiff MCGOWAN, as alleged above, Plaintiff has suffered the intangible loss of employment-related opportunities.  As a result of such retaliation and consequent harm, Plaintiff MCGOWAN has suffered such damages in an amount according to proof.

172.   As a further proximate result of Defendants' retaliatory conduct, by and through Defendants RICHARD, O'CALLAHAN, MCCOWAN, SCURFIELD, CERNUDA, LONG and HILL, against Plaintiff MCGOWAN, as alleged above, Plaintiff has suffered humiliation, mental anguish, emotional and physical distress, and has been injured in mind and body.  As a result of such retaliation and consequent harm, Plaintiff MCGOWAN has suffered such emotional distress damages in an amount according to proof.

173.   Plaintiff has been injured by Defendant's retaliatory employment practices in violation of various sections of the Labor Code entitling him to an award of reasonable attorneys' fees pursuant to statute.

174.   Plaintiff has been injured by Defendant's retaliatory employment practices in violation of various sections of the Labor Code entitling him to reinstatement of employment and all back pay.

175.   Plaintiff has been injured by Defendant's retaliatory employment practices in violation of various sections of the Labor Code entitling him penalty payments of $10,000.00 for each violation.

176.   Defendants O'CALLAHAN, MCCOWAN, SCURFIELD, CERNUDA, LONG and HILL acted with malice and intended to injure Plaintiff MCGOWAN. Defendants retaliated against Plaintiff MCGOWAN, by terminating him.  The unlawful conduct of Defendants O'CALLAHAN, MCCOWAN, SCURFIELD, CERNUDA, LONG and HILL was so mean and vile because Defendants' conduct vindictive and discriminatorily motivated.  As Defendants' unlawful conduct was deliberate, malicious, fraudulent, oppressive and in reckless disregard of Plaintiff's rights under California Civil Code § 3294, Plaintiff MCGOWAN is entitled to punitive and exemplary damages against Defendant NETAPP in an amount sufficient to punish Defendant for such malicious and oppressive conduct.

177.   WHEREFORE, Plaintiff MCGOWAN requests relief as hereinafter provided.

## COUNT EIGHT

### (RACE/NATIONAL ORIGIN DISCRIMINATION – DISPARATE TREATMENT)

**Against Defendant NETAPP only**

178.   Plaintiff MCGOWAN complains against Defendant NETAPP and DOES 1 through 25, inclusive, and realleges all the allegations contained in Paragraphs 1 through 177 and incorporates them by reference into this count as though fully set forth herein.

179.   Plaintiff MCGOWAN is African American, Guyana ancestry.

180.   While representing that Defendant NETAPP's diversity, inclusion, and belonging goals are a continuous process of self-reflection and growth, to build belonging

within our culture, values and business practices, the company's executive staff is primarily Caucasian with no African Americans.

181.   At all times herein mentioned, Plaintiff MCGOWAN was a more than qualified and competent employee as he earned the most bookings entitling him to placement in the Presidents Club.  Instead of receiving his appointment to the Club, his position was given to a white male.

182.   Defendant NETAPP denied Plaintiff his commissions, delayed paying him his commissions for up to two years, dismantled his sales team to prevent him from making his commissions, and terminated his employment.

183.   Caucasian employees were not subject to the same treatment.  Instead, they were assigned to less strenuous positions, received reduced quotas, and paid commissions although they did not meet the objective criteria.

184.   As a proximate result of Defendant's discriminatory actions against Plaintiff MCGOWAN, as alleged above, Plaintiff has suffered loss of his salary, wages, commissions, benefits and additional amounts of money he would have received if Defendant NETAPP would have provided fair and non-discriminatory working conditions.  As a result of such discrimination and consequent harm, Plaintiff MCGOWAN has suffered such damages in an amount according to proof.

185.   As a further proximate result of Defendant's discriminatory actions against Plaintiff MCGOWAN, as alleged above, Plaintiff has suffered the intangible loss of employment-related opportunities such as unbiased interactions with subordinate and co-workers in management.  As a result of such discrimination and consequent harm, Plaintiff MCGOWAN has suffered such damages in an amount according to proof.

186.   As a further proximate result of Defendant's discriminatory actions against Plaintiff MCGOWAN, as alleged above, Plaintiff has suffered humiliation, mental anguish, emotional and physical distress, and has been injured in mind and body.  As a result of such discrimination and consequent harm, Plaintiff MCGOWAN has suffered such emotional distress damages in an amount according to proof.

187.    Defendant's discriminatory action against Plaintiff, as alleged above, constituted unlawful discrimination in violation of various sections of FEHA entitling him to an award of reasonable attorneys' fees pursuant to statute.

188.    Defendant NETAPP acted with malice and in reckless disregard of Plaintiff's rights under FEHA by having knowledge of the discriminatory policies and practices of terminating American employees.  Defendant NETAPP, through the individual Defendants, officers and managing agents, engaged in said unlawfully harassing conduct against Plaintiff and implemented said discriminatory practices throughout the company.  Additionally, other managerial agents and officers were aware of Defendants' conduct, knew that said discriminatory conduct was occurring against Plaintiff, and condoned and ratified Defendants' discriminatory conduct against Plaintiff.

189.    Defendant RICHARD and CERNUDA are managing agents or officers of Defendant NETAPP who engaged in the harassing practices, and was at all times herein, in a position of authority, made decisions on the company's behalf and decisions regarding the employees and purposely chose to harass and terminate Plaintiff because he is American.  Defendant NETAPP, through Defendants, and other managing agents, officers and/or directors knew the existence of the discriminatory environment and intentionally implemented harassing and discriminatory practices targeting Plaintiff MCGOWAN.

190.    Defendants failed to discipline the employees who engaged in this discriminatory behavior and refused to take precautionary measures to prevent further discrimination in the workplace in complete disregard of the law.  As a result of the above-recited actions and by allowing Defendants RICHARD and SCURFIELD to continuously harass Plaintiff MCGOWAN, Defendants acted in complete disregard of Plaintiff's rights.  As the conduct of Defendants NETAPP and LONG was deliberate, malicious, fraudulent, oppressive and in reckless disregard of Plaintiff's rights under FEHA, and under California Civil Code § 3294, Plaintiff is entitled to punitive and

47

exemplary damages against Defendants NETAPP in an amount sufficient to punish Defendants for such malicious and oppressive conduct.

191.   WHEREFORE, Plaintiff MCGOWAN requests relief as hereinafter provided.

## COUNT NINE

**(WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY)**

**Against Defendant NETAPP only**

192.   Plaintiff MCGOWAN complains against Defendants and DOES 1 through 25, inclusive, and realleges all the allegations contained in Paragraphs 1 through 191 and incorporates them by reference into this count as though fully set forth herein.

193.   Plaintiff MCGOWAN, African American, Guyana national origin, and who complained about Defendants ongoing and continuous failure to timely and fully pay earned commissions.

194.   In violation of FEHA, codified in California Government Code § 12960 *et seq*., Defendant NETAPP terminated Plaintiff MCGOWAN based upon his race and national origin.  FEHA prohibits discrimination and harassment based upon race, national origin and other protective classifications and is a statute for the public's benefit that is fundamental, substantial and well-established.

195.   In violation of Labor Code § 1102.5, Defendant NETAPP terminated Plaintiff MCGOWAN who complained about Defendants ongoing failure to fully and timely pay his earned commissions.  Said statute for the public's benefit that is fundamental, substantial and well-established.

196.   At all times herein mentioned, Plaintiff MCGOWAN was qualified for his respective position.   At the time of the conduct alleged herein, Plaintiff MCGOWAN performed his duties and responsibilities in accordance with his job duties and responsibilities, supervisory direction and Defendant NETAPP's policies and procedures, to provide bookings for the benefit of Defendant NETAPP.

197.    As a proximate result of Defendant NETAPP's discriminatory actions and wrongful termination, by and through individual Defendants, against Plaintiff MCGOWAN, as alleged above, Plaintiff has suffered loss of his salary, commissions, benefits and additional amounts of money he would have received if Defendant NETAPP would not have terminated his employment relationship.  As a result of such discrimination and consequent harm, Plaintiff MCGOWAN has suffered such damages in an amount according to proof.

198.    As a further proximate result of Defendant's discriminatory actions and wrongful termination, by and through individual Defendants, against Plaintiff MCGOWAN, as alleged above, Plaintiff has suffered the intangible loss of employment-related opportunities.  As a result of such discrimination and consequent harm, Plaintiff MCGOWAN has suffered such damages in an amount according to proof.

199.    As a further proximate result of Defendant's discriminatory actions and wrongful termination, by and through individual Defendants, against Plaintiff MCGOWAN, as alleged above, Plaintiff has suffered humiliation, mental anguish, emotional and physical distress, and has been injured in mind and body.  As a result of such discrimination and consequent harm, Plaintiff MCGOWAN has suffered such emotional distress damages in an amount according to proof.

200.    As a result of the above-recited actions and by allowing its employees to harass and discriminate against Plaintiff MCGOWAN, Defendant NETAPP's unlawful conduct was in complete disregard of Plaintiffs' rights.  As Defendant NETAPP's conduct was deliberate, malicious, fraudulent, oppressive and in reckless disregard of Plaintiffs' rights under FEHA, and under California Civil Code § 3294, Plaintiff MCGOWAN are entitled to punitive and exemplary damages against Defendant NETAPP in an amount sufficient to punish Defendants for such malicious and oppressive conduct.

201.    Additionally, as no adequate remedy exists at law for the injuries suffered by Plaintiff herein, insofar as the employment opportunity that Defendants have denied to

Plaintiff cannot be secured absent injunctive relief.  If this court does not grant injunctive relief of the type and for the purpose specified below, Plaintiff will suffer irreparable injury.  Therefore, Plaintiff requests the following injunctive relief that requires Defendant NETAPP to reinstate Plaintiff MCGOWAN employment and cease and desist any further retaliatory conduct against him.

202.    WHEREFORE, Plaintiff requests relief as hereinafter provided.

## COUNT TEN

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

### Against All Defendants

203.    Plaintiff MCGOWAN complains against Defendants and DOES 1 through 50, inclusive, and realleges all the allegations contained in Paragraphs 1 through 202 and incorporates them by reference into this count as though fully set forth herein.

204.    Defendant NETAPP, through RICHARD, O'CALLAHAN, MCCOWAN, SCURFIELD, CERNUDA, LONG and HILL concocted, participated in, implemented and/or executed a scheme that not only manipulated the commissions that Plaintiff and the sales team could earn, but also, denied Plaintiff his earned commissions first, for more than 22 months and completely when Plaintiff complained about Defendants' conduct.  Defendants misrepresented the commissions plan with no intent to timely pay commissions earned.

205.    As Plaintiff continuously advocated for full compensation of commissions earned as promised, Defendants, including managerial agents, also concocted a scheme and conspired with each other to terminate Plaintiff because he repeatedly spoke against Defendants violation of state and federal laws.

206.    Additionally, Defendant NETAPP, through RICHARD, O'CALLAHAN, MCCOWAN, SCURFIELD, CERNUDA, LONG and HILL, engaged in conduct against Plaintiff MCGOWAN based upon his race and national origin, wherein Defendants treated him differently than his Caucasian peers.  For over a year, Plaintiff had been

denied commissions while his Caucasian peers received decreased quotas and were paid commissions which they did not properly earn.

207.    Defendants RICHARD and SCURFIELD dismantled Plaintiff's sales team to prevent him from earning his commissions.  Defendants LONG, CERNUDA, MCGOWAN, and HILL terminated his employment.

208.    Defendants' conduct was extreme and outrageous and done with the intent to cause and did cause Plaintiff MCGOWAN to suffer severe emotional distress, including but not limited to mental suffering, anguish, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame because of the actions of Defendant NETAPP and its staff.

209.    As a result of Defendants' intentional, extreme and outrageous conduct against Plaintiff MCGOWAN, as alleged above, Plaintiff has suffered extreme emotional and physical distress, including humiliation, mental anguish, emotional and physical distress, and has been injured in mind and body.  As a result of such discrimination and consequent harm, Plaintiff MCGOWAN has suffered such emotional damages in an amount according to proof.

210.    As a proximate result of Defendants discriminatory and harassing conduct against Plaintiff MCGOWAN, as alleged above, Plaintiff has suffered loss of his salary, benefits, commissions and additional amounts of money he would have received if Defendant NETAPP, by and through individual Defendants, would not have terminated his employment relationship with NETAPP.  As a result of such discrimination and consequent harm, Plaintiff MCGOWAN has suffered such damages in an amount according to proof.

211.    As a further proximate result of Defendants' fraudulent scheme and discriminatory and harassing actions, by and through Defendants RICHARD, O'CALLAHAN, MCCOWAN, SCURFIELD, CERNUDA, LONG and HILL, against Plaintiff MCGOWAN, as alleged above, Plaintiff has suffered the intangible loss of

employment-related opportunities.  As a result of such discrimination and consequent harm, Plaintiff MCGOWAN has suffered such damages in an amount according to proof.

212.    Defendants acted with malice and intended to injure Plaintiff MCGOWAN. Defendants commenced a feign scheme to deny commission earned.  Defendants benefited from the bookings, by defrauding SEC by concealing said true facts concerning NETAPP's untimely payment of commissions and by attempting to silence Plaintiff from exposing the fraudulent concealment.  Defendants engaged in said conduct to subject Plaintiff MCGOWAN to cruel and unjust hardship with the knowledge they were disregarding Plaintiff's rights.

213.    Defendants' unlawful conduct was so mean and vile because they knew they had no basis for their conduct other than discriminatory, harassing motivation to terminate Plaintiff because he requested Defendants to comply with American state and federal laws and interfered with Defendants' proceeds from the sale of expired, defective car seat that were harming consumers and their babies.  As Defendants' unlawful conduct was deliberate, malicious, fraudulent, oppressive and in reckless disregard of Plaintiff's rights under California Civil Code § 3294, Plaintiff MCGOWAN is entitled to punitive and exemplary damages against Defendants RICHARD, O'CALLAHAN, MCCOWAN, SCURFIELD, CERNUDA, LONG and HILL in an amount sufficient to punish Defendants for such malicious and oppressive conduct.

214.    Defendants are managing agents of Defendant NETAPP.  Defendants are in positions of authority and made decisions on Defendant NETAPP's behalf and regarding its employees.  Defendants RICHARD, O'CALLAHAN, MCCOWAN, SCURFIELD, CERNUDA, LONG and HILL used their positions and authority to discriminate against Plaintiff, wherein Defendants intentionally and oppressively conspired with each other and other officers, directors, and managing agents to concoct a scheme to terminate Plaintiff MCGOWAN, all with malice and ill intent to injure Plaintiff MCGOWAN and to terminate his employment.  As Defendants' unlawful conduct was deliberate, malicious, fraudulent, oppressive and in reckless disregard of Plaintiff's rights under

California <u>Civil Code</u> § 3294, Plaintiff MCGOWAN is entitled to punitive and exemplary damages against Defendant NETAPP in an amount sufficient to punish Defendant for such malicious and oppressive conduct.

215.   WHEREFORE, Plaintiff MCGOWAN requests relief as hereinafter provided.

### COUNT ELEVEN

**(Failure to Pay All Wages**

**In Violation of <u>Labor Code</u> §§ 204 and 204.1)**

**Against Defendant NETAPP only**

216.   Plaintiff MCGOWAN complains against Defendants and DOES 1 through 25, inclusive, and realleges all the allegations contained in Paragraphs 1 through 215 and incorporates them by reference into this count as though fully set forth herein.

217.   Wages include all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation.  <u>Labor Code</u> § 200(a).

218.   <u>Labor Code</u> § 204 provides that all wages earned by an employee are due and payable at least twice during each calendar month on days designated in advance by the employer as the regular paydays.  Salaried "white color" employees may be paid monthly exempt executive, administrative and professional employees of an employer covered by the <u>Fair Labor Standards Act</u> (FLSA) may be paid once a month rather than semi-monthly <u>Id</u>.

219.   <u>Labor Code</u> § 204.1 provides that commission wages are compensation paid to any person for services rendered in the sale of such employer's property or services and based proportionately upon the amount or value thereof.

220.   Defendant NETAPP pays earned commissions once a month.  However, in violation of <u>Labor Code</u> § 204, Defendant NETAPP intentionally failed to pay Plaintiff his earned commissions in the amount of $245,000 at the time they were earned in FY19. Said earnings were not paid until 27 months after they were due.  Moreover, Defendant

NETAPP willfully and intentionally failed and refused to timely pay earned commissions for the FY19 period and earned commissions in the amount of approximately $153,000.00 for the FY22 period.

221. Plaintiff is entitled to recover $153,000 in earned commissions which is due and owing, in accordance with Labor Code §§ 204, 204.1 and 218.

222. Plaintiff MCGOWAN' recoverable damages are "certain or capable of being made certain by calculation," and therefore, pursuant to Civil Code § 3287(b), Plaintiff is entitled as a matter of law to prejudgment interest from the date the right to recover vested. Plaintiff requests an award of interest on the unpaid wages, in accordance with Labor Code § 218.6 and Civil Code § 3287(b).

223. Plaintiff is entitled to recover reasonable attorneys' fees and costs of suit herein incurred, in accordance with Labor Code § 218.5.

224. WHEREFORE, Plaintiff MCGOWAN requests relief as hereinafter provided.

### COUNT TWELVE

**(Statutory Penalties**

**Pursuant to Labor Code § 210)**

**Against Defendant NETAPP only**

225. Plaintiff MCGOWAN complains against Defendant NETAPP and DOES 1 through 25, inclusive, and realleges all the allegations contained in Paragraphs 1 through 224 and incorporates them by reference into this count as though fully set forth herein.

226. Defendant NETAPP misclassified Plaintiff's earned commissions in the amount of $245,000 as an unlawful retention bonus and intentionally delayed said payment for 27 months as well as denied him his earned commissions in the amount of $153,000, owed by May 1, 2022.

227. As a result of Defendant NETAPP's violation of Sections 204 and 204.1, Plaintiff is entitled to penalties against Defendant, in addition to, and entirely independent and apart from, any other penalty provided in this article as follows:

228.    (1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee.

229.    (2) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld.

230.    Pursuant to *Labor Code* § 218.5, Plaintiff requests an award of reasonable costs, including attorneys' fees, in enforcing the rights granted by this *Labor Code* section.

231.    Plaintiff MCGOWAN' recoverable damages are "certain or capable of being made certain by calculation," and therefore, pursuant to Civil Code § 3287(b), Plaintiff is entitled as a matter of law to prejudgment interest from the date the right to recover vested.  Plaintiff requests an award of interest on the unpaid wages, in accordance with Labor Code § 218.6 and Civil Code § 3287(b).

232.    WHEREFORE, Plaintiff MCGOWAN requests relief as hereinafter provided.

**COUNT THIRTEEN**

**(Waiting Time Penalties**

**Pursuant to Labor Code § 203)**

**Against Defendant NETAPP only**

233.    Plaintiff MCGOWAN complains against Defendants and DOES 1 through 50, inclusive, and realleges all the allegations contained in Paragraphs 1 through 232 and incorporates them by reference into this count as though fully set forth herein.

234.    Defendant NETAPP failed to compensate Plaintiff for all time worked at the time of his termination.  Pursuant to Labor Code § 201, Defendant NETAPP was obligated to pay Plaintiff his earned commissions in the amount of $153,000 at his termination but failed to do so.  Plaintiff MCGOWAN has suffered damages in an amount to be established according to proof at time of trial.

235.    Plaintiff earns a base salary of $270,000 plus 100% commissions for an annual salary of $540,000, monthly salary in the amount of $45,000.  Plaintiff alleges that his daily rate is approximately $2,045 for a penalty payment owed in the amount of $61,363.63.

236.    As a proximate result of Defendant NETAPP's willful failure to pay Plaintiff MCGOWAN all wages owed at the time Plaintiff 's employment relationship terminated, as required by Labor Code § 201, Plaintiff is entitled to waiting time penalties pursuant to Labor Code § 203, in an amount equal to 30 days of his per diem wage rate. Plaintiff has suffered damages to be established at trial according to proof.

237.    Pursuant to Labor Code § 218.5, Plaintiff requests an award of reasonable costs, including attorneys' fees, in enforcing the rights granted by this Labor Code section.

238.    Plaintiff MCGOWAN' recoverable damages are "certain or capable of being made certain by calculation," and therefore, pursuant to Civil Code § 3287(b), Plaintiff is entitled as a matter of law to prejudgment interest from the date the right to recover vested.  Plaintiff requests an award of interest on the unpaid wages, in accordance with Labor Code § 218.6 and Civil Code § 3287(b).

239.    WHEREFORE, Plaintiff MCGOWAN requests relief as hereinafter provided.

## COUNT FOURTEEN

**(Unfair Business Practices In Violation Of**

**Business & Professions Code § 17200, e*t seq.*)**

**Against Defendant NETAPP only**

240.    Plaintiff MCGOWAN complains against Defendants and DOES 1 through 50, inclusive, and realleges all the allegations contained in Paragraphs 1 through 239 and incorporates them by reference into this count as though fully set forth herein.

241.    *Business and Professions Code* § 17200 *et seq.* prohibits acts of unfair competition, which shall mean and include any "unlawful and unfair business practices."

242.    The conduct of Defendants as alleged herein has been and continues to be unfair, unlawful, and deleterious to Plaintiff.  Plaintiff is a "person" within the meaning of *Business and Professions Code* § 17204, and therefore has standing to bring this suit for injunctive relief and restitution.

243.    The prompt payment of wages is a fundamental public policy of the State of California.

244.    It is also the public policy of the State to enforce minimum labor standards, to ensure that employees are not required or permitted to work under substandard and unlawful conditions, and to protect those employers who comply with the law from losing competitive advantage to other employers who fail to comply with labor standards and requirements.  Through the conduct alleged herein, Defendant NETAPP acted contrary to these public policies and have thus engaged in unlawful and/or unfair business practices in violation of *Business and Professions Code* §§ 17200 *et. seq.*, depriving Plaintiff of the rights, benefits, and privileges guaranteed to employees under California law.

245.    Defendant NETAPP's violation of California's labor laws constitutes a business practice because it was done repeatedly over a significant period of time and in a systematic manner to the detriment of Plaintiff MCGOWAN and other similarly situated employees.  Defendant NETAPP regularly and routinely violated the following statutes and regulations with respect to Plaintiff:

(a)    *Labor Code* §§201 and 203 (failure to pay wages due on a timely basis);

(b)    *Labor Code* § 204 and 204.1 (failure to compensate for all hours worked); and

246.    By engaging in these business practices, which are unfair business practices within the meaning of *Business and Professions Code* §§ 17200 *et al. seq.*, Defendant harmed Plaintiff and gained an unfair competitive edge.  Under the *Business and*

*Professions Code* § 17203, Plaintiff is entitled to obtain restitution of these funds on his behalf.

247. Pursuant to *Business and Professions Code* § 17203, injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair business practices as alleged herein. Plaintiff is informed and believes that Defendant, and persons acting in concert with them, have committed and will continue to commit the above-described unlawful acts unless restrained or enjoined by this Court. Unless the relief prayed for below is granted, a multiplicity of actions will result. Plaintiff has no plain, speedy, or adequate remedy at law, in that pecuniary compensation alone would not afford adequate and complete relief. The above-described acts will cause great and irreparable damage to Plaintiff unless Defendant NETAPP is restrained from committing further illegal acts.

248. Plaintiff's success in this action will result in the enforcement of important rights affecting the public. Private enforcement of the rights enumerated in this Complaint is necessary, as public agencies have only sought limited enforcement of those rights, if any. The named Plaintiff individually, and by and through counsel, is incurring a financial burden in pursuing this action. Plaintiff further seeks to enjoin the above-referenced unlawful actions under the *Labor Code*. Therefore, Plaintiff seeks an award of attorney's fees and costs of suit on this count pursuant to California *Code of Civil Procedure* § 1021.5 and other applicable laws.

249. WHEREFORE, Plaintiff MCGOWAN requests relief as hereinafter provided.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff MCGOWAN respectfully prays that this Court enter judgment in his favor and against Defendants NETAPP, INC., HENRI RICHARD, ELIZABETH O'CALLAHAN, DEBRA MCCOWAN, CÉSAR CERNUDA, RICHARD SCURFIELD, MAXWELL LONG, and ROSALIND HILL as follows:

1.      Compensatory damages in an amount according to proof and prejudgment interest thereon to the extent allowable by law for all Counts;

2.      Treble damages on the First, Second and Third Counts in an amount according to proof;

3.      Exemplary and punitive damages on the Sixth through Tenth Counts in an amount according to proof;

4.      Emotional distress damages on the Sixth through Tenth Counts in an amount according to proof;

5.      Reinstatement of employment for the Seven and Ninth Counts;

6.      Declaratory Relief for Fifth Count;

7.      Injunctive Relief for the Fourteenth Count;

5.      Attorneys' fees and costs for the First through Third, Seventh and Eighth, and Eleventh through Fourteenth Counts; and

6.      Such other and further relief as the Court deems just and proper.


Respectfully submitted,

Date:  August 22, 2023      **THE HILL LAW FIRM**


By: _____

Michelle E. Hill
Attorneys for Plaintiff
NEIL MCGOWAN

1

## **DEMAND FOR JURY TRIAL**

2

3       Pursuant to Federal <u>Rules of Civil Procedure</u>, Rule 38 and Civil <u>Local Rules</u>, Rule

4    3-6(a), Plaintiff hereby demands a jury trial on all issues triable by a jury.

5

6

7

8                                             Respectfully submitted,

9    Date:  August 22, 2023             **THE HILL LAW FIRM**

10

11

12   By: _____
       Michelle E. Hill
13       Attorneys for Plaintiff
       NEIL MCGOWAN

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF