UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEIL MCGOWAN,<br><br>        Plaintiff,<br><br>   v.<br><br>NETAPP, INC., a Delaware corporation, HENRI RICHARD, ELIZABETH O'CALLAHAN, DEBRA MCGOWAN, CESAR CERNUDA, RICHARD SCURFIELD, MAXWELL LONG, ROSALIND HILL, and DOES 1 THROUGH 50<br><br>        Defendants. | No. 23-04291 WHA<br><br>**ORDER TO INITIATE ARBITRATION OR TO DISMISS THIS CIVIL ACTION** |

**INTRODUCTION**

In this RICO and FEHA action, this order finds that the arbitration agreement between plaintiff and defendants requires plaintiff to initiate arbitration.

**STATEMENT**

Defendant NetApp, Inc., a company which provides data and cloud-storage services and management, hired plaintiff Neil McGowan as a Vice President and General Manager of Sales. Plaintiff was a commission-earning employee and each year, NetApp issued an incentive compensation plan and a goals sheet (Dkt. No. 15 at 8–9). The goals sheet governed plaintiff's salary and commission for each fiscal year. Plaintiff, as well as all other commission-sales employees (known as "participants" under the commission plan) were required to accept their goal sheet and that year's commission plan (Dkt. No. 15 at 9). The commission plan provided two methods for resolving disputes between a participant and NetApp: (1) internal dispute resolution and (2) external dispute resolution via arbitration.

Plaintiff was terminated in August 2022. Plaintiff filed suit against NetApp in August 2023, asserting claims that arise out of the compensation plan which, according to plaintiff, allowed NetApp to delay or deny the sales team earned commissions. In November 2023, defendants filed a motion to compel arbitration and stay litigation pending the outcome of arbitration.

In January 2024, an order granted defendants' motion to compel arbitration and stayed this action pending the arbitration's outcome (Dkt. No. 40). More specifically, that order found that plaintiff had agreed to NetApp's compensation plan for the 2023 fiscal year and that the arbitration agreement was indeed part of that plan.

Six months later, the Court inquired as to the status of the case only to learn that neither side had initiated arbitration and the dispute remained. The parties disagreed on who has the burden to do so (Dkt. No. 42 at ¶ 6; Dkt. No. 43 at 2). Following a status conference on the issue, each party filed a supplemental briefing over who had the burden to initiate arbitration.

**ANALYSIS**

When, as here, an arbitration "[a]greement is 'a contract evidencing a transaction involving commerce,' it is subject to the FAA" or Federal Arbitration Act. *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting 9 U.S.C. § 2). Our court of appeals has held that a district court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Ibid*. A previous order already found that the parties entered into a valid agreement encompassing the claims in its order to compel arbitration (Dkt. No. 40). The FAA now "requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron*, 207 F.3d at 1130.

The sides disagree as to which party must initiate arbitration. Plaintiff asserts that parties cannot proceed with arbitration until defendants submit this matter to NetApp's Sales

Compensation Review Board (SCRB) (Dkt. No. 49 at 3). According to plaintiff, the language in the arbitration agreement requires the party asking for arbitration to initiate it through a written demand for arbitration (*ibid.*). Defendants, however, assert that plaintiff must initiate arbitration because he is "the party asserting the Dispute" (Dkt. No. 50 at 1 (quoting Dkt. No. 15-1, Exh. I at 3)).

Plaintiff's arguments rest on an initial assertion that external dispute resolution (and by extension, arbitration) is only permissible after parties attempt to resolve the matter through internal dispute resolution. To support this, plaintiff cites to explicit language which is supposedly found in the compensation plans from 2018 and 2020 through 2023 (*see* Dkt. No. 49 at 3 (claiming that "*each fiscal year's arbitration provision is the same* and reads as follows: 'external dispute resolution shall be available . . . as the exclusive means to resolve a dispute after Internal Dispute Resolution has been attempted and there has been no resolution of the dispute to NetApp's or the Participant's satisfaction within 90 days after submissions to the [SCRB]'")) (emphasis added). However, the cited language does not, in fact, appear in the 2023 version of the agreement, which is the only version binding and thus relevant to this case.

After reviewing the 2023 compensation plan and its arbitration agreement, this order disagrees with plaintiff that this matter must first be submitted to SCRB to proceed to arbitration. There is no language in the 2023 compensation plan requiring parties to go through the internal dispute resolution process or the SCRB to proceed to arbitration. In fact, the compensation plan's internal dispute resolution provision explicitly preserves this right to external arbitration, holding that "[n]othing in this [internal] process shall alter the rights and obligations contained in any applicable Arbitration Agreement between the Participant and the Company" (Dkt. No. 15-1 Exh. I at 2). Under the arbitration agreement, "External Dispute Resolution shall be the exclusive means for NetApp or a U.S. Participant to resolve a Dispute that is *not otherwise resolved* through the Internal Dispute Resolution process" (*id*. at 3)

3

(emphasis added). This provision furnishes parties with a right to arbitrate any live claim (regardless of whether any party submitted anything to the SCRB). There is no requirement that parties first attempt resolution through alternative methods. Thus, this order finds that the 2023 compensation plan contains no prerequisite for either side prior to arbitration.

This order now considers which party has the burden to initiate arbitration. The 2023 arbitration agreement states that, "[t]o initiate arbitration, the party asserting the Dispute shall deliver to other party a written demand for arbitration setting forth the basis of the claim and the relief and dollar amount of damages sought" (*id*. at 3). Defendants cite this provision to support their argument that plaintiff has the burden to initiate arbitration (Dkt. No. 50 at 1). The key inquiry is what the agreement meant by "the Dispute" (Dkt. No. 15-1 Exh. I at 3). Once this inquiry is resolved, the asserting party — and therefore the party burdened with initiating arbitration — becomes clear.

This order focuses on the language in the contract itself to ascertain the plain meaning of its terms. *See Essex Walnut Owner L.P. v. Aspen Specialty Insurance Co.*, 335 F.Supp.3d 1146, 1150–51 (N.D. Cal. Aug. 15, 2018) (Judge Edward M. Chen). The compensation plan defines dispute as "any dispute between a Participant and NetApp regarding entitlement to compensation under the Plan or arising out of any aspect of the Plan or application of the Plan" (*id*. at 2). A previous order already found that plaintiff's claims were brought under "the Plan." As such, this order finds that plaintiff is "the party asserting the Dispute" within the meaning of the compensation plan (*id*. at 3).

Further, the arbitration agreement also incorporated the institutional JAMS rules and requires that arbitration procedures "be conducted in accordance with JAMS Employment Arbitration Rules and Procedures" (*id*. at 4). Those rules do not, however, define the term "dispute" or contradict the compensation plan's definition. Neither does any other provision of the arbitration agreement. As such, this order finds that, according to the terms of the

4

arbitration agreement, plaintiff has the burden to initiate arbitration.

One might think that the party insisting on arbitration in lieu of a pending lawsuit would have the burden to initiate any arbitration. But the Federal Rules of Civil Procedure do not so state. The closest they come is in Rule 8(c) designating an "arbitration and award" to be raised as an affirmative defense, also stating generally that any other matter of "avoidance" must be pled as an affirmative defense. Nor has any other caselaw been provided to impose such a rule. Given the absence of clear a rule, law, this order recognizes that the issue of burden to initiate may be adjusted by the parties in their agreement (so long as it is not unconscionable). In this case, the agreement places the burden on the claimant. But in a different case, the agreement might go another way. This order in no way holds that all plaintiffs under all agreements have the burden to initiate arbitration. Plaintiff is hereby **ORDERED** to initiate arbitration per the terms of his agreement with defendants, failing which within 28 days the civil action shall be dismissed (rather than merely stayed).

## CONCLUSION

For the forgoing reasons, this order finds that the arbitration agreement requires plaintiff to initiate arbitration. Plaintiff shall do so within 28 days and certify herein that he has done so or else this civil action will not merely be stayed but shall also be dismissed.

**IT IS SO ORDERED.**

Dated: August 28, 2024.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE